557 So.2d 1376 (1990)
BUNGE CORPORATION and Northbrook Excess & Surplus Insurance Company, Insurance Company of North America, American Home Assurance Company, Atlanta International Insurance Company, Bellefonte Reinsurance Company, California Union Insurance Company, Hanover Insurance Company, International Insurance Company, Lexington Insurance Company, British National Insurance Company, Ltd., Subrogees of Bunge Corporation
v.
GATX CORPORATION, GATX Tank Erection Corporation, GATX Terminals Corporation, GATX Leasing Corporation, GATX Marine Corporation, GATX Second Marine Corporation, GATX Third Marine Corporation, Varlen Corporation, Sapulpa Corporation, Sapulpa Tank Company, John Doe 1 Corporation, John Doe 2 Corporation, John Doe 3 Corporation, and John Doe 4 Corporation.
No. 89-C-1645.
Supreme Court of Louisiana.
March 12, 1990.
Rehearing Denied April 26, 1990.
*1378 C.G. Norwood, Jr., Michael M. Noonan, Margaret Diamond, William Bologna, McGlinchey, Stafford, Mintz, Cellini & Lane, H. Bruce Shreves, Jay H. Kern, Warren W. Wingerter, Simon, Peragine, Smith & Redfearn, New Orleans, George F. Curran, for applicant.
John J. Weigel, Madeleine Fischer, Jones, Walker, Waechter, Poitevent Carrere & Denegre, New Orleans, Steve Griffith, for respondents.
DIXON, Chief Justice.
The issue before us is whether the ten year peremptive period for actions arising out of construction defects as set out in R.S. 9:2772 applies where a contractor acquires knowledge of a hazardous condition in his construction and yet fails to warn the owner.
In 1966, predecessor corporations of defendant GATX contracted to build a grain storage tank at plaintiff Bunge's Destrehan plant. The tank, two hundred feet in diameter and fifty-six feet in height, was completed and used to store grain by Bunge no later than 1969. In January of 1982, the tank ruptured and caused damage to Bunge's adjoining property and equipment. Bunge contends the tank failed due to the action of the cooling external air on the tank full of warm grain. At the time the tank ruptured, it held approximately 1.7 million bushels of wheat. Bunge alleged that after GATX built the tank, it learned yet failed to advise Bunge that the tank could rupture or fail under certain conditions, including rapid changes in temperature. Had it known of this propensity, Bunge claims it could have acted to prevent the subsequent damage. By the time suit was filed almost a year after the incident, Bunge's subrogated insurers had paid out $4,928,000 in damage claims. Bunge's theories of recovery included claims in redhibition, express and implied warranty, tort, contract, res ipsa loquitur, and strict liability, and it sought nearly $10,000,000 in damages for business and property loss. GATX filed a motion for summary judgment, arguing that plaintiffs' claims are barred under R.S. 9:2772.
The trial judge held and then continued a hearing on GATX's summary judgment motion in anticipation of a decision in Tenneco Oil Co. v. Chicago Bridge and Iron Co., 495 So.2d 1317, on rehearing, (La.App. 4th Cir.1986), writ denied, 497 So.2d 1015 (La. 1986). In Tenneco, the court of appeal held that a contractor who learns of a defect in an immovable he has constructed has a duty to notify the owner, and that an action arising from breach of this duty to warn is not perempted by R.S. 9:2772. The trial judge in the case before us conducted a second hearing in light of the Tenneco decision, but nevertheless granted GATX's motion for summary judgment, reasoning that 9:2772 bars all claims Bunge has against GATX.
On appeal, Bunge relied on Tenneco and argued the 10-year peremptive period set out in R.S. 9:2772 for actions against contractors for defects in design or construction of immovables does not apply when the contractor has knowledge of defects but fails to inform the owner. In affirming the trial court, the court of appeal hearing this case expressly disagreed with the Tenneco holding and held instead that 9:2772 bars all actions in contract and tort after ten years. Bunge Corp., et al. v. GATX Corp., et al., 546 So.2d 814 (La.App. 5th Cir.1989). We granted the writ to decide whether failure to warn claims survive the statutory peremptive period.

*1379 ANALYSIS
R.S. 9:2772, captioned "Peremptive period for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon," provides in pertinent part:
"A. No action, whether ex contractu, ex delicto, or otherwise, to recover on a contract or to recover damages shall be brought ... against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of an improvement to immovable property:
(1) More than ten years after the date of registry in the mortgage office of acceptance of the work by owner; or
(2) ... more than ten years after the improvement has been ... occupied by the owner;
. . . .
B. The causes which are perempted within the time described above include any action:
(1) For any deficiency in the ... construction of any improvement to immovable property;
(2) For damage to property, movable or immovable, arising out of any such deficiency; ...." R.S. 9:2772.
The title of the statute makes clear that its limitation period is peremptive rather than prescriptive. Peremption is prescription which is not subject to interruption or suspension. Flowers, Inc. v. Rausch, 364 So.2d 928, 931 (La.1978). "[P]rescription bars the remedy sought to be enforced and terminates the right of access to the courts for enforcement of existing right. A peremptive statute, however, totally destroys the previously existing right with the result that, upon expiration of the prescribed period, a cause of action or substantive right no longer exists to be enforced." Pounds v. Schori, 377 So.2d 1195, 1198 (La.1979).
We previously upheld the constitutionality of this peremptive statute in Burmaster v. Gravity Drainage District No. 2, 366 So.2d 1381 (La.1978). In Burmaster, plaintiff claimed her husband's death was caused by defendant's negligent design and installation of a guardrail brace which protruded into a walkway. Plaintiff alleged defendant knew or should have known of the danger posed by this construction and yet failed to incorporate a warning in its design. In response to the defendant engineer's motion for summary judgment, the trial court ruled 9:2772 unconstitutional. Upon defendant's application, we granted the writ to review the ruling of unconstitutionality. The merit of plaintiff's failure to warn claim, a question which had not been addressed by the trial judge, was hence not before us.[1]
In upholding the statute, we reasoned in part that the legislature could reasonably have concluded that after acceptance by the owner, architects and contractors no longer have access to or control of structural modifications and for this reason they should be accorded protection of the peremptive period. The effect of 9:2772 is therefore to eliminate causes of action arising out of structural defect when the defect is discovered more than ten years after acceptance or occupancy.
Subsequent to our decision in Burmaster, the scope of the statute was addressed by the federal court in KSLA-TV, Inc. v. Radio Corp. of America, 732 F.2d 441 (5th Cir.1984). That case involved suit for damages brought by a television station after its 1700 foot broadcast tower collapsed more than ten years after acceptance. The plaintiffs argued the limitations period in 9:2772 was tolled by fraudulent concealment *1380 of defects. The court rejected that argument and found even allegations of fraud did not toll the ten year period.[2]
In the following year, a Louisiana court ruled that causes of action based on allegations of fraud were outside the scope of the statute. The court in Academy Park Improvement Association v. New Orleans, 469 So.2d 2, 4 (La.App. 4th Cir.1985), writ denied, 475 So.2d 361 (La.1985), concluded 9:2772 "does not by its terms purport to limit every action against someone who once built a building."[3] Instead, the court concluded that 9:2772's language limits only actions which arise from deficiencies in design or construction. The court reasoned "deficiency" could not be fairly interpreted to include allegedly deliberate fraudulent planning and building of a flood-prone subdivision, since fraud was "no more a `deficiency' in design or construction than Socrates's hemlock was a `deficiency' in diet." Academy Park, supra at 4. In its reasoning, the court relied on this fundamental rule:
"The bedrock principle in the interpretation of statutes that would close the courts to injured persons is La. Const. art. 1, s. 22: `All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, ... for injury to him....' That constitutional principle does not invalidate reasonable time limitations upon bringing an action, and specifically does not invalidate R.S. 9:2772; Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381 (La.1978). Yet because of that constitutional principle (and others) limitative statutes cannot be extended by analogy: in the words of C.C. 3457, `There is no prescription other than that established by legislation.' `Prescription is stricti juris and the statutes on the subject cannot be extended from one action to another, nor to analogous cases beyond the strict letter of the law.' Duer v. Taylor v. Blanchard, Walker, 354 So.2d 192 (La.1978)." Academy Park, supra at 3.
Shortly after the Academy Park decision, the legislature amended 9:2772 so that claims involving fraud were specifically exempted from the statute's reach. By Acts 1985, No. 303, s. 1, the legislature provided:
"H. (1) The peremptive period provided by this Section shall not apply to an action to recover on a contract or to recover damages against any person ... whose fraud has caused the breach of contract or damages sued upon...." R.S. 9:2772.
Thus, in instances where a builder or contractor has acted fraudulently, the peremptive period will not apply.
The next relevant interpretation of the statute was Tenneco, supra, where, more than ten years after acceptance, an oil refinery gasoline tank caught on fire, causing property damage and personal injury. The tank in question had a "floating roof," which allowed for expansion of its contents so that heated vapors would be trapped rather than vented, and then would condense once the tank cooled off. Plaintiff alleged defendant builder had learned that owners of these tanks were injecting air or noncondensable gases into the tank, had also learned that this practice was hazardous, and yet had failed to warn the tank owners.
In its initial consideration of the case, the court of appeal found all plaintiff's claims *1381 related to a failure by defendant to warn of a deficiency in the tank's design and that they were thus all perempted by operation of the statute. Subsequently, rehearing was granted and a five judge panel considered the argument that defendant's failure to warn of a dangerous propensity in the use of the gasoline tank violated a duty which did not arise out of a design defect. Plaintiffs argued, as do the plaintiffs in the case before us, that violation of the duty to warn leads to a cause of action not perempted by R.S. 9:2772.
In its opinion on rehearing, the court decided that a contractor who acquires knowledge of a danger inherent in the ordinary use of that which he has constructed has a duty to warn, at the very least, the owner. The court found the builder also has a duty to warn if he has knowledge that the owner's actual use creates a danger where the owner's use would otherwise be considered normal. Relying on the reasoning of Academy Park, the court decided the legislature could not have intended to allow a contractor to escape liability where he had knowledge of dangers in the use of the apparatus which he had built and failed to warn the owner with whom he had contracted. The court held plaintiff's cause of action based on failure to warn was not barred by 9:2772.
There is reason to believe that at least some of Bunge's claims fit within the statute and hence may be barred by peremption. The parties agree that the tank can be classified as an improvement to immovable property. They also agree the contract was one for "construction" whereby GATX's predecessor, as contractor, warranted the tank to be suitable and proper for its intended purpose of storing grain. Finally, the parties agree that occupancy occurred at the latest in 1969; therefore, more than ten years had passed by the time of Bunge's 1983 petition. Under the statute, Bunge's claims relating to allegations that the grain storage tank ruptured due to construction deficiencies or design defects would seem to be perempted. However, Bunge asserts that it has stated a claim which does not necessarily arise out of a defect in the storage tank and which it argues is thus not perempted by 9:2772. In paragraph XXV of its petition, Bunge alleged defendants were negligent:
"(o) In failing to advise the Bunge Corporation that the tank would rupture or fail under certain conditions, including rapid changes in temperatures, upon learning the same after the tank had been sold to Bunge Corporation; ...."
Bunge contends GATX's possession of this knowledge led to a duty to warn. Had such warning been given, Bunge contends it could have taken measures, such as moving the grain to another location, which could have prevented the explosion.
In the district court, GATX sought dismissal of Bunge's suit by filing a motion for summary judgment. However, neither GATX nor Bunge supported or opposed the motion with affidavits as required by C.C.P. 966-67. The record contains merely pleadings, briefs, and documents concerning the contractual relationship and dates of occupancy. The case is actually presented to us as if here on an exception of no cause of action, with the defendant presenting 9:2772 as an affirmative defense to all the claims brought by plaintiff. "Such an exception attacks the legal sufficiency of the petition, and all well pleaded allegations are accepted as true." Owens v. Martin, 449 So.2d 448, 450 (La. 1984). Because of the posture of the case, we do not consider the merits of Bunge's allegation but solely determine whether any of the claims survive the exception.
The legal question presented is twofold. We must decide whether a contractor has a duty to warn the owner where the contractor acquires knowledge that a hazardous condition exists in the ordinary usage of a construction he has built. If such a duty to warn does exist, we then must decide whether a cause of action for damages resulting from a breach of that duty is perempted by application of 9:2772.
Bunge argues the exemption of failure-to-warn claims from the peremptive bar of 9:2772 is consistent with legislative intent, as evidenced by the imposition of a continuing duty on manufacturers of movables to *1382 warn consumers of hazards inherent in the use of products.
"A manufacturer of a product who, after the product has left his control, acquires knowledge of a characteristic of the product that may cause damage and the danger of such characteristic, or who would have acquired such knowledge had he acted as a reasonably prudent manufacturer, is liable for damage caused by his subsequent failure to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." R.S. 9:2800.57(C).
In addition, Bunge argues public policy favors the exemption of failure to warn claims from the peremptive period because the builder's superior skill and knowledge place him in a position to learn of possible hazards in the thing he has built and impose an obligation to warn so that possible damage can be avoided.
GATX, meanwhile, argues the statute bars "all actions" brought against contractors except those dealing with fraud. GATX also argues that a cause of action for failure to warn of a defect in design, whether it arises at time of construction or subsequently, is related to a "deficiency" in design and that such claims are expressly perempted by the statute. In essence, GATX contends warnings are part of the design of a product and the failure to incorporate warnings thus represents a design defect which, after the lapse of ten years, is perempted as a basis for suit.
If we accept GATX's argument, however, the result could be the insulation of irresponsible behavior from liability. If a claim based on knowledge and failure to warn is perempted by 9:2772, a builder with knowledge of a dangerous risk inherent in his construction has only to conceal the danger for ten years and thus avoid all liability for ensuing damage or personal injury. Such inaction could have unreasonable consequences. For example, if the builder of a large office building knows there is possibility of explosion or collapse of his construction, yet maintains silence for ten years after occupancy then seeks protection of the statutory peremptive period, he would arguably be free of liability for the consequences of his failure to act. We can not believe the legislature intended such result.
In order to decide the question, we begin with the legal principle that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. C.C. 2315. Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill. C.C. 2316. The elements of a cause of action based on negligence under C.C. 2315-16 are fault, causation, and damages. Seals v. Morris, 410 So.2d 715, 718 (La.1982). "Fault alone is not sufficient. Damages alone (in a negligence action) are not sufficient. Both are needed (along with a causal link between the negligent act and the damage complained of) in order for a cause of action to exist." Owens v. Martin, 449 So.2d 448, 451 (La. 1984).
Under these rules, persons are liable for acts of commission and omission that cause damage to another if a duty imposed by the relationship of the parties is breached by such act or omission. Dornak v. Lafayette General Hospital, 399 So.2d 168, 170 (La. 1981). In Dornak, we held a prospective employer, once having undertaken to give pre-employment physical examinations, had a duty to disclose a tubercular condition discovered during such an exam to its prospective employee. "To notify plaintiff of the findings would have been a simple matter not requiring the professional skill of a physician and not imposing an undue burden" on the officers of the employer. The determinative issue in deciding the question of negligence is whether "the party's conduct conform[ed] to the standard of care that would be exercised by a reasonable man...." Dyson v. Gulf Modular Corp., 338 So.2d 1385, 1390 (La. 1976).
The liability of manufacturers, vendors, and lessors of real and personal property has been extended in recent years for both breach of implied warranty and for personal injury and property damage arising out of defective conditions of which the particular *1383 vendor or lessor had knowledge at the time of transaction. This liability for damages resulting from a condition known at the time of sale has been based, because of plaintiff's reliance, on a theory of negligence; but more often, courts have based recovery on a theory of fraud, the courts finding either actual or constructive misrepresentation. "Even where the basis of recovery has been negligence, no liability has resulted where the condition which caused the damage was disclosed, a circumstance which indicates that the gist of the wrong is the fact that the vendor or lessor failed to disclose what it was his duty to disclose." Keeton, "FraudConcealment and Non-Disclosure," 15 Tex.L.Rev. 1, 15 (1936). Nevertheless, it is only if defendant had a duty to disclose that a cause of action will lie for "in the absence of a duty to speak, silence is not fraud." Goldfarb, "Fraud and Nondisclosure in the Vendor-Purchaser Relation," 8 W.Res.L.Rev. 5, 11 (1956).
The doctrine of "caveat emptor," used in the broad meaning of imposing risks on both parties to a transaction, has been greatly limited since its origin. The classic English case of Peek v. Gurney, L.R. 6 H.L. 377 (1873), held that there is no duty to disclose facts, however morally censurable their non-disclosure may be. That statement, based on the individualistic philosophy of freedom of contract, has grown in disfavor as courts have struggled to reach justice while maintaining the degree of certainty required by the law. Thus, it is now commonly said that if either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose, then his silence is fraudulent. Modern law, therefore, imposes on parties to a transaction a duty to speak whenever justice, equity, and fair dealing demand it. "This duty to speak does not result from an implied representation by silence, but exists because a refusal to speak constitutes unfair conduct." Keeton, 15 Tex.L.Rev. at 31.
Louisiana law recognizes that the refusal to speak, in the face of an obligation to do so, is not merely unfair but is fraudulent:
"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." C.C. 1953.
Under the old rule, there was no affirmative duty of disclosure between parties dealing at arm's length, and a vendor was not liable, for example, for failing to disclose to his purchaser that a home for sale was infested with termintes. However, the harshness of the rule has been mitigated by limitations and exceptions that have gone "a long way toward swallowing up the rule...." 2 Harper, James and Gray, The Law of Torts 470-71 (1986). Hence, the rule no longer protects the defendant who actively conceals a defect by painting over it or by otherwise preventing plaintiff's investigation, but recognizes such acts as misrepresentations.
Likewise, the failure to disclose existence of a known danger, where one knows that another is relying on the appearance of safety, can constitute misrepresentation.
"... The surgeon who remains silent when he discovers that he has left his tools in the patient's anatomy, the air traffic controller who fails to warn a pilot of air turbulence, the landlord who leases defective premises, the landowner who permits a licensee to enter without warning of hidden perils, the seller of a chattel who fails to disclose its hidden dangers, the person who promises and then fails to pass on information important to another's welfare, each may be liable to the person with whom he deals, or to others whom harm is to be expected through that person's reliance. The `something like fraud on the part of the giver,' which the courts have found in these cases, consists in permitting another to rely upon a tacit assurance of safety, when it is known that there is danger." Prosser and Keeton, Torts, 207-08 (1984).
It has long been held that the duty to disclose exists where the parties stand in *1384 some confidential[4] or fiduciary relation to one another, such as that of principal and agent or executor and beneficiary of an estate. Contracts, such as those of suretyship or guaranty, can also impose such a duty. More recently, courts have tended to impose a duty when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed. The existence of this duty is a legal question. Relevant factors include whether the obligation is being imposed on a seller, who is more likely to be required to disclose; the importance of the fact not disclosed; the relationship of the parties; and the nature of the fact not disclosed. For instance, in contracts for sale, if the vendor conceals an intrinsic defect not discoverable by reasonable care, there is a much greater likelihood of the existence of a duty to disclose the non-discoverable and intrinsic defect than there would be to disclose something extrinsic such as a fact likely to affect market value. Prosser and Keeton, Torts, 738-39.
Two general rules which have arisen are that if the material facts are accessible only to the vendor and are not within the reach of the diligent attention, observation and judgment of the plaintiff, the vendor is bound to disclose them; and where the conditions affect personal health and safety, the vendor's duty is greater than where they merely affect the value of the property. If the defect is severe enough, "mere negligence on the part of the defendant in not learning of it may be a sufficient predicate of liability. If it is less substantial, his motive and intent become material." Goldfarb, 8 W.Res.L.Rev. at 16-7. While discussion of these factors often focuses on the duty to disclose at the time of sale, they are also relevant in determining whether a duty of disclosure arises when knowledge of a hazard arises after the sale.
We have noted Louisiana law imposes a duty on a manufacturer to provide warning of any danger inherent in the normal use of its product which is not within the knowledge of an ordinary user. R.S. 9:2800.57(C). The rule is that there is "no question that a manufacturer with ... knowledge [that a machine he built could malfunction] has a duty to warn users of its product of the danger." Winterrowd v. Travelers Indemnity Company, 462 So.2d 639, 642 (La.1985). The duty to warn was imposed in Winterrowd even though the defendant's malfunctioning punch press had been constructed in 1907 and injury to the user occurred in 1976. This decision shows the duty to warn, where it exists, is a continuing one.
Traditionally, builders, craftsmen, artisans and manufacturers have been held to a high standard of accountability for the product of their workmanship. For example, in a suit based in redhibition, a buyer must prove the seller's knowledge of the vice of a thing in order to escape the one year prescriptive period of C.C. 2546. Tuminello v. Mawby, 220 La. 733, 734, 57 So.2d 666, 667 (1952). In contrast, both French law and Louisiana law presume an artisan, craftsman, builder or manufacturer knows of the vice or defect in the article he constructs, manufactures, or builds. Tuminello, supra, 57 So.2d at 668. The distinction is sound, for the one who constructs a thing should be held to a higher standard of accountability than the one who merely sells it.
Nevertheless, in a cause of action based on failure to warn, the presumption of knowledge is not available after ten years because that presumption arises from a plaintiff's proof of defect alone and is perempted after the conditions of the statute have been satisfied. Thus, after the ten year peremptive period, plaintiff must not only show a defect or hazard but must establish knowledge on the part of the *1385 builder in order to present a viable cause of action.
There is a high degree of reliance by one who contracts with another to build a building intended to last for many years. Given this degree of reliance, the superior knowledge of the builder and his access to information concerning industry improvements and advances, it is only logical that the builder who acquires knowledge that can prevent personal injury or property loss has a duty to convey that information to those for whom he has built. The failure to disclose information which is not available to discovery by the ordinarily prudent and reasonably diligent owner, and which if known can help the owner prevent serious property damage or personal injury, violates the duty to behave reasonably. Faced with this set of circumstances, the ordinary ethical person should disclose.
Therefore, there is a duty of disclosure placed upon the builder who subsequent to sale acquires knowledge of a hazard which arises from the ordinary usage of his construction and which creates a danger of personal injury or property damage. In failing to disclose information which the defendant in good faith is bound to reveal, the builder who does not disclose is guilty of bad faith. If an owner can show that his builder was guilty of misrepresentation based on breach of the duty to disclose, then the statutory exception would be operable and the peremptive period would not apply. Thus a claim based on this breach fits within the exception for fraud built into the statute, R.S. 9:2772(H)(1), and the owner's cause of action will not be perempted by 9:2772.
If a cause of action is not perempted by the statute, it will be subject to ordinary principles of prescription. A hazardous condition may or may not arise out of a defect, but the harm itself under these facts arises from the failure to disclose. Under 9:2772(H), the peremptive period does not apply to an action to recover on contract or to recover damages against a builder whose failure to warn has caused the damages sued upon. The well recognized rule is that:
"... when a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and that he may elect to recover his damages in either of the two actions. In such cases, the prescription applicable is determined by the character which plaintiff gives his pleadings and the form of his action." Federal Insurance Company v. Insurance Company of North America, 262 La. 509, 511, 263 So.2d 871, 872 (1972).
The building contract between GATX's predecessor and Bunge, which is in the record, provides that "all materials ... furnished by Contractor shall be suitable and proper quality and quantity and shall be installed by proper workmanship." In addition, the contractor warranted that the tank would be "designed and constructed as to make it suitable and proper for the storage of grain which is its intended purpose." In the petition, Bunge alleged GATX had actual or constructive knowledge of latent defects in the tank which made it unfit for its intended purpose. Such allegation charges the contract was breached and thus gives rise to a cause of action in contract. Bunge also sought relief in tort, claiming negligent design and construction of the tank, as well as negligent failure to warn.
A basic principle in our law is that prescription can not run where the injury has not manifested itself. C.C. 3492. In the case of a workman who sustained an eye injury which led some months later to blindness, we said, "A person cannot bring suit until his cause of action has accrued, and until a cause of action has accrued, prescription cannot run against it.... [Thus] prescription is suspended if it be made to appear that there was good legal reason for not bringing the action earlier...." Guderian v. Sterling Sugar & Railway Co., 151 La. 59, 91 So. 546 (1922). See also, Jones v. Texas & P. Ry. Co., 125 La. 542, 51 So. 582 (1910).
We have said, "when the tortious conduct and resulting damages continue, prescription does not begin until the conduct *1386 causing the damage is abated.... Where the cause of the injury is a continuous one giving rise to successive damages, prescription dates from cessation of the wrongful conduct causing the damage." South Central Bell Telephone v. Texaco, Inc., 418 So.2d 531, 533 (La.1982); Wilson v. Hartzman, 373 So.2d 204 (La.App. 4th Cir.1979), writ denied, 376 So.2d 961 (La.1979).
Ordinarily the art. 3492 prescriptive period for delictual actions begins to run on the day the injury is sustained and lapses one year later. However, "there is an exception where there was no knowledge of the fact that there was damage or where, through some act of the party who caused the damage, the injured person is kept in ignorance of the fact that there has been damage or the cause thereof." Perrin v. Rodriguez, 153 So. 555, 556 (La.App. Orleans, 1934). It has been said that the provision shows an intention to eliminate, as the commencement date for prescription, the date of the act causing injury when that date does not coincide with the day the damage was sustained. In determining when prescription commenced in the case of a plaintiff suffering from cancer caused by cigarettes, Judge John Minor Wisdom wrote, "the plaintiff [has] to have had knowledge of the relationship between the offense and damages sustained in order for knowledge to start the running of prescription...." R.J. Reynolds Tobacco Company v. Hudson, 314 F.2d 776, 780 (5th Cir. 1963).
While the plaintiff must exercise reasonable diligence in ascertaining the identity of the party injuring him, he can make no such effort where he is not even aware that he has been injured. "Basically, prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, as long as such ignorance is not willful and does not result from his neglect." Dean v. Hercules, Inc., 328 So.2d 69, 75 (La.1976).
"In Werges v. St. Louis, C & N.O.R. Co., 35 La.Ann. 641, this court said: `As the damages claimed are predicated on alleged continuous wrongful acts, causes which are supposed to occur daily, and to produce effects daily repeated, we are of opinion that the plea cannot be sustained in law, and it must therefore be overruled. "In such cases, prescription, whatever the length of time, has no application"....
`In such cases, when"the injury is of a continuing nature, the cause of action continues and is renewed de die in diem, as long as the cause of continuing damage is allowed to continue." Addison on Torts, p. 1163.'" DiCarlo v. Laundry & Dry Cleaning Service, 178 La. 676, 683, 152 So. 327, 329 (1933).
See also Devoke v. Yazoo & M.V.R. Co., 211 La. 729, 30 So.2d 816 (1947).
If the rule were otherwise, "the defendants would be profiting by their own wronga thing inadmissible in law." Hyman v. Hibernia Bank & Trust, 139 La. 411, 418, 71 So. 598, 600 (1916). Thus, where damage is not apparent, prescription begins to run only from the time that the plaintiff is conscious or aware, as would be a reasonable person under similar circumstances, of both the tort and the damage. Stone, Louisiana Civil law TreatiseTort Doctrine s. 120 (1977).
In this case, the injury arises from the alleged failure to disclose knowledge of a hazardous situation. So long as the defendant with a duty to disclose possesses knowledge and yet fails to act, the tort is a continuing one which renews itself from day to day. Prescription in such a case will not begin to run until the time when plaintiff learns that he has been injured by the failure to disclose. In this case, Bunge claims that prior to the explosion, it had no knowledge that GATX had failed to disclose. However, Bunge received clear notice of injury when the tank exploded and filed suit within a year, thus satisfying requirements of the shortest applicable period of prescription.[5] We recognize, however, the possibility that breach of contract *1387 under facts like these could trigger application of a ten year prescriptive period.[6]
As we indicated above, timely disclosure will ensure a builder's good faith either within or outside the ten year peremptive period. Our ruling in Burmaster provided that ten years after occupancy or acceptance, liability for defect shifts from the builder to the owner. We now limit that ruling to the case in which a builder is in good faith. This means that the builder who acquires knowledge of a condition in his construction which is dangerous and not discoverable through the owner's ordinary and reasonable diligence has the duty to warn the owner. If the builder acquires knowledge and warns subsequent to acceptance or occupancy yet still within the 9:2772 peremptive period, he may be subject to the duty to cure; but he also will preserve his good faith and, after ten years, not be further liable. Likewise, the builder who, after the ten year period has expired, acquires knowledge and warns will also be in good faith; because the 9:2772 peremptive period will have expired such builder will have fulfilled his duty and will not be liable for damage that ensues so long as his disclosure has been timely.[7] The only situation where the peremptive period will not apply is that in which a builder is in bad faith because he acquired knowledge of a hazard not reasonably discoverable through the owner's diligence and failed to disclose, whether such failure falls within the ten year period following occupancy or acceptance or after that period expires.
Far from vitiating the peremptive period, the effect of such ruling is to offer full protection to the good faith builder who either has no knowledge of a potential hazard or who acquires knowledge and warns the owner. We believe the effect of the ruling will be to encourage such disclosures by protecting builders who comply with their duty. It is only the builder guilty of wrongful silence who will not receive protection of the statutory peremptive period.
Applying these principles to this case, we find Bunge's petition raises disputed questions of fact concerning whether GATX is guilty of misconduct and whether GATX's inaction kept Bunge ignorant of a known danger in its construction. The bare allegation, however, that defendant possessed knowledge that the tank could rupture under certain conditions or was not fit for its intended purpose has not been supported by affidavits or depositions. On the other hand, the defendants did not file an answer in denial of this allegation. After oral arguments before this Court, GATX moved to supplement the record by filing an answer generally denying all Bunge's claims. Bunge objected to this motion, contending GATX can not supplement the record in this Court by filing a pleading which was not filed in the district court. Furthermore, Bunge argues the sole issue before us is whether any of the claims in the petition survive the limitations period of 9:2772. Since we answer that question in Bunge's favor, the correct procedural action is to remand to the trial court for further proceedings where GATX may answer, file further exceptions, or make a motion for summary judgment on substantive grounds.
In his ruling, the trial judge said, "The evidence expressly shows to this court that GATX had no knowledge of any defect as outlined in Tenneco Oil Company v. Chicago *1388 Bridge and Iron Company, 495 So.2d 1317 (La.App. 4th Cir.1986) either at construction or subsequent to the delivery of the tank, and as such, GATX is entitled to have their ... summary judgment [motion] maintained against Bunge; ...." The record contains little evidence on the question of GATX's knowledge but does show that after some dispute concerning a reduction in price due to construction delays, Bunge made final payment on the tank in March of 1967. In the fall of that year, the tank buckled. In intraoffice memoranda, GATX blamed the buckling on improper preparation of grades and foundation, work which the contract provided was Bunge's responsibility. Bunge contends this memo, of which it was unaware until pretrial discovery, supports its claim that GATX had knowledge of defects in the tank as early as 1967. It will be up to the trial judge on remand to determine the merits of this claim.
The allegation in the petition which charges defendant with knowledge and failure to warn plaintiff of a hazardous condition in the construction asserts a claim based in fraud. The claim based on this allegation, therefore, falls within the exception set out in 9:2772(H) to the ten year peremptive period created by the statute. The exception of no cause of action is overruled and the case is remanded to the district court for proceedings consistent with this opinion, at the cost of respondents.
LEMMON, J., concurs and assigns reasons.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (dissenting).
I consider that the ten-year peremptive period for actions arising out of construction defects as set forth in R.S. 9:2772 includes the failure to warn. R.S. 9:2772 bars "all actions" brought against contractors except those dealing with fraud. A cause of action for failure to warn of a defect in design is related to a deficiency in design and such claims are expressly perempted by the statute. I do not agree that the allegation in the petition which charges defendant with knowledge and failure to warn plaintiff of a hazardous condition in the construction asserts a claim based in fraud. Accordingly, I respectfully dissent.

ON APPLICATION FOR REHEARING
COLE, Justice.
I respectfully dissent from the denial of a rehearing in this case.
We should grant a limited rehearing in order to clarify certain statements made in our original opinion insofar as they relate to "constructive misrepresentation." Although these statements are not critical to our decision, they could lead to some confusion among the lower courts.
It is axiomatic that the intent to defraud must be present in any fraud case. Buxton v. McKendrick, 223 La. 62, 64 So.2d 844 (1953). Therefore, an examination of what a defendant should have known is irrelevant in the fraud context. Without actual knowledge, there can be no intent to defraud.
Our opinion should be amended to require the trial court to determine whether defendant GATX had actual knowledge of the defect. In the absence of such a finding, the fraud exception provided by La.R.S. 9:2772 (H) should not apply, and thus the ten year preemption would bar plaintiff's action.
NOTES
[1] For purposes of the constitutional ruling, Burmaster assumed 9:2772's applicability to the facts alleged in the petition. We concluded, since plaintiff's decedent died more than fifteen years after registry of acceptance in the mortgage office, the statute abolished plaintiff's cause of action which was based on breach of a duty to warn. However, the opinion conceded that the applicability of the statute had not been addressed by the trial court; therefore, the question of whether the statute perempted plaintiff's claim was not before us. Burmaster did not hold that claims arising from breach of a duty to warn are within the ambit of the statute. Any inference that such duty did not exist was purely dicta to the opinion and hence is not controlling on the question before us. In addition, the statute has since been amended.
[2] The plaintiffs in KSLA-TV presented the alternative argument that 9:2772 did not apply to actions for negligent failure to warn where the duty to warn arose from knowledge obtained subsequent to the completion of construction of their broadcast tower. The court found that failure to warn of a danger arising from the design or construction, whether knowledge of the danger was obtained subsequent to construction or not, would still fall within the statute. The plaintiffs also argued that defendants had a duty to warn of a danger that did not result from defective design or construction. The court rejected this claim because plaintiffs had failed to allege facts sufficient to prove the existence of such duty. KSLA-TV, supra at 444.
[3] The court noted a bank's action on a loan is not perempted notwithstanding the borrower built a building over ten years ago. Similarly, the statute does not bar actions for personal injury in an automobile accident against the driver's employer, even though 9:2772(B)(4) purportedly bars any action against a person for the action or failure to act of his employees.
[4] The confidential relationship is not restricted to any specific association of the parties. While the most frequent illustrations are those of trustee and beneficiary, attorney and client, parent and child, or husband and wife, the term also embraces partners and co-partners, principal and agent, master and servant, physician and patient, "and generally all persons who are associated by any relation of trust and confidence." Appeal of Darlington, 147 Pa. 624, 23 A. 1046, 1047 (1892).
[5] It is feasible that a defendant could show that plaintiff received notice of defendant's failure to disclose over one year before suit was filed. On such a showing, plaintiff's tort claims would be barred.
[6] "An action against a contractor or an architect on account of defects of construction, renovation, or repair of buildings and other works is subject to a liberative prescription of ten years." C.C. 3500. Comment (b) says the rules concerning the commencement of this prescriptive period are set out in 9:2772. The statute thus requires that the art. 3500 prescriptive period commences at the date of acceptance or occupancy in the case of the good faith builder who has no knowledge of a dangerous condition. In the case of a builder in bad faith who has knowledge and fails to warn, the prescriptive period would not commence until the owner acquires knowledge of the builder's breach of duty.
[7] Even if the builder acquires knowledge and does warn, yet plaintiff can show that the builder was negligent in failing to issue a timely warning and that plaintiff was thereby prevented from taking adequate preventative measures, defendant might still be liable for damages caused by his negligence.