DeMOSS, Circuit Judge,
concurring in part and dissenting in part:
I concur in the analysis and holdings of parts 11(A), 11(E), III, and IV of the majority opinion. I concur also as to certain limited holdings in part 11(B). I respectfully dissent, however, as to the remainder of 11(B) and as to parts 11(C) and (D). I write now to set forth my reasons for these positions.
I.
I concur in part 11(A) of the majority opinion, which holds that certain language from our Court’s prior opinion in Society of the Roman Catholic Church v. Interstate Fire & Casualty Co., 26 F.3d 1359 (5th Cir.1994) [hereinafter Society /], does not bar Gallagher from contending that there is a triable issue over whether it expressly warranted that the Diocese was fully insured. See ante, at 734-35 (quoting Society I, 26 F.3d at 1367). In essence, the majority categorizes this quote as dicta, pointing out that “what the [Society I ] panel really meant ... was that there was a genuine dispute of material fact over whether the Diocese’s claim is contractual; and, so, the [Society I ] panel simply held that the Diocese’s claim was not delictual as a matter of law and thus the district court wrongfully granted Gallagher summary judgment (and this is the most the panel could have held).” Ante, at 735-36.
While the majority does not discuss it, I am concerned by the fact that the district court, in rendering summary judgment in favor of the Diocese after remand, quoted the same Society I language. I think it is therefore highly probable that the district judge treated the statement in Society I not as dicta, but rather as a ruling which dictated a grant of summary judgment in favor of the Diocese after remand. I cannot fathom any other reason why the district judge would have referred to it in his summary judgment determination, and from my review of this record I have serious doubts that the district judge would have granted summary judgment in favor of the Diocese if the opinion in Society I had not included the quoted language, but had instead said what the majority opinion now says the panel in Society I “really meant” to say.
II.
A.
I concur with the language of part 11(B) of the majority opinion which disposes of the Diocese’s contentions regarding “unilateral” or “gratuitous” contracts. Likewise, I concur with the majority’s determination in part 11(B) that the contractual relationship between Gallagher and the Diocese was for a term of one year only with the parties being able to renew and extend that contractual relationship for subsequent years by making renewal agreements each year. Finally, I also concur with the majority’s determination in part 11(B) that, with regard to the “second year of plan coverage,” there was a genuine dispute of material fact as to whether Gallagher made an express warranty.
*745 B.
I cannot concur with and therefore dissent from the majority’s determination in part 11(B) that, “with regard to the first year of plan coverage, there is no genuine dispute of a material fact over whether Gallagher expressly warranted that the Diocese would be fully insured for all losses above the loss fund.” Ante, at 739-40. From my reading of the summary judgment record in this case, I think there is sufficient evidence upon which a jury could reasonably conclude that the “fully insured” language in the first plan proposal did not create an express warranty by Gallagher that the Diocese would be fully insured for all losses above the loss fund.
The best example of the evidence upon which I think a jury could so conclude is the parties’ actions following the “rash of mysterious arson fires” which occurred during the first year of the plan. See ante, at 733-34. The losses sustained by the Diocese from these arson fires were of such number and magnitude as to make readily apparent that the loss fund of $400,000 for the first year would not be adequate to absorb the losses involved and also pay the other losses which the parties had estimated would need to be covered by the loss fund. If the Diocese truly believed that the “fully insured” language in the first-year proposal created an express warranty by Gallagher that the Diocese would never have to pay more than $400,000 on losses in the first year, then surely the Diocese would have immediately asserted its rights under that express warranty and called upon Gallagher to pay the losses chargeable for the first year against the loss fund in excess of the $400,000 upper limit. I could find absolutely nothing in the summary judgment record which indicated that the Diocese ever asserted such a right at that time; accordingly, I think a reasonable jury could infer that at the time of the “rash of mysterious arson fires” the parties did not construe the language of the first-year proposal as creating such an obligation on the part of Gallagher.
Likewise, when the parties addressed the task of entering into the renewal agreement for the second year of the plan, the renewal proposal did not include any “written explanatory material assuring the Diocese that it was ‘fully insured’ over the loss fund.” Ante, at 734. If the Diocese truly considered the “fully insured” language in the first proposal as creating an express warranty on the part of Gallagher, one would expect the Diocese to raise some objection about the exclusion of this language in the second proposal. From my examination of the summary judgment record, I saw no indication that that was the position taken by the Diocese. Consequently, I think a jury could reasonably infer that the Diocese did not consider the “fully insured language” as an express warranty on the part of Gallagher because (i) they did not insist on compliance therewith during the first year of the plan, and (ii) they did not raise any objection to the elimination of this language in the proposal for the second year.
In reviewing a grant of summary judgment, we are required to “construe all facts and inferences in the light most favorable to the nonmoving party,” see ante, at 731, which in this circumstance is Gallagher. Consequently, I would not distinguish the first year from the second year of the plan. I would simply send the whole issue of what the parties intended by use of the “fully insured language” for trial on the merits by the jury.
C.
I cannot concur with the majority’s holding that “[t]he Diocese had no duty to provide Gallagher with information about possible future losses either when the parties entered the plan or during the plan’s initial year.” Ante, at 739^40. The majority cites no case law or statute to support that proposition regarding the duty owed by a proposed insured to the agent who is going to arrange insurance coverage for the insured. While I cannot cite any Louisiana case which deals specifically with the situation of proposed insured and its insurance agent, I read the opinion of the Louisiana Supreme Court in Bunge Corp. v. GATX Corp., 557 So.2d 1376 (La.1990), as a broad overview of the circumstances in which disclosure is required. In that opinion, the Louisiana Supreme Court stated: “Modern law ... imposes on parties to a transaction a duty to speak whenever *746 justice, equity and fair dealing demand it.” Bunge, 557 So.2d at 1383 (quoting W. Page Keeton, Fraud — Concealment and Non-Disclosure, 15 Texas L. Rev. 1,15 (1936)). Furthermore, the Louisiana Supreme Court stated in that same opinion:
It has long been held that the duty to disclose exists where the parties stand in some confidential or fiduciary relation to one another, such as that of principal and agent or executor and beneficiary of an estate.
Id. 557 So.2d at 1383-84 (footnote omitted and emphasis supplied). We are bound to apply Louisiana law in this diversity case, and I think that under the language and philosophy of Bunge we should hold that there is a duty upon a proposed insured to disclose to the insurance agent all of the knowledge and awareness which the insured might have as to possible claims and risks for which the proposed insured wants to be protected by insurance. I think that duty would be particularly applicable in the circumstances of the present case where the Diocese now claims that Gallagher gave it an express warranty that it would be fully insured and yet did not tell Gallagher about the incidents of molestation which had already occurred. There is sufficient summary judgment evidence of such prior knowledge on the part of the Diocese as to raise a triable issue that the Diocese had knowledge which was not disclosed.
The possible liability which the Diocese would face as a result of sexual molestation of young boys by its priests is, in my view, not the sort of standard or typical risk which a reasonably prudent insurance agent would be expected to anticipate in arranging for insurance coverage. If the Diocese wanted to be “fully insured” as to that particular risk, it should have fully disclosed the nature and extent of the prior incidences of sexual molestation by its priests. The summary judgment record in this case indicates that Gallagher made inquiries about the loss experience of the Diocese in prior years and tailored its plan based upon that prior loss experience. The task of an insurance agent in designing the types and levels of insurance coverage so that an insured may be “fully insured” cannot be done unless the agent knows all of the types of risks and claims to which the insured is exposed. In my view there is a triable jury issue as to whether the phrase “fully insured” constituted an express warranty by Gallagher, but even assuming it did, I think fairness and justice and the language of Bunge would say that there is a legitimate jury issue as to (i) whether the Diocese knew and failed to disclose to Gallagher the risk of sexual molestation claims as a result of the conduct of pedophilic priests and (ii) whether Gallagher should be held for liability under its special warranty as to a risk which was not a standard and ordinary risk and which was a risk of which it had no prior knowledge.
D.
In my view, there are innumerable fact issues which a jury should decide. Undoubtedly, Gallagher’s sales representatives used a lot of puffery in selling their program to the Diocese. The Diocese demonstrated by its actions, however, that it recognized that it was just puffery and not a special contractual warranty. Everything was working fine until the landslide of the sexual molestation cases hit. Because there were so many of these claims and the dollar amount of each claim was so high, the layer of Lloyd’s excess coverage was burned up by the first few settlements of the child molestation claims. As a consequence, the Diocese had to pay the first $550,000 of each later claim rather than just the first $100,000. A jury might find that at that point, the Diocese decided that it would go back and change the puffery into a special contractual warranty and shift the loss to Gallagher. Gallagher responds that it was the Diocese’s employee, the priest, who was committing all of the acts of sexual molestation, and the Diocese knew about it and did not tell Gallagher. How, Gallagher asks, could it be expected to design an insurance plan that would adequately cover a risk it did not know about? The place to sort out all of these cross-currents of claims and factual disputes is before the trial jury, and under the facts available in this case, the jury could find either for the Diocese or for Gallagher and the evidence would support either *747 finding. Summary judgment in favor of the Diocese was, therefore, error.