719 So.2d 604 (1998)
In re MEDICAL REVIEW PANEL Proceeding Kavya VAIDYANATHAN.
No. 98-CA-0289.
Court of Appeal of Louisiana, Fourth Circuit.
September 23, 1998.
*605 Marcus J. Poulliard, Seelig, Cosse, Frischhertz & Poulliard, New Orleans, for Appellant.
Stephen M. Pizzo, Dante' V. Maraldo, Blue Williams, L.L.P., Metairie, for Appellee/Dr. Harold R. York.
Lloyd W. Hayes, Thomas, Hayes, & Buckley, New Orleans, for Appellee/James L. Reynolds, M.D.
Margaret Bradley, Marilyn R. Cohen, Law Offices of Robert E. Birtel, Metairie, for Appellee/Dr. Mary Anderson.
Before BARRY, PLOTKIN and LANDRIEU, JJ.
PLOTKIN, Judge.
Plaintiffs Dr. Ganeesan and Meena Vaidyanathan, individually and on behalf of their minor daughter Kavya (hereinafter referred to as "the Vaidyanathans") appeal a trial court judgment granting an exception of prescription in favor of defendants, Dr. Harold York, Dr. Mary Anderson, and Dr. James Reynolds (hereinafter referred to collectively as "defendant physicians"). Finding no error in the trial court judgment, we affirm.

Facts
The Vaidyanathans' daughter, Kavya, was born on October 12, 1986; she was three weeks premature. On November 3, 1986, Dr. York, during his first examination of Kavya, noted a heart murmur. Because he suspected a ventricular septal defect ("VSD"), Dr. York recommended that the Vaidyanathans consult with Dr. Reynolds, who was a pediatric cardiologist.
One week later, on November 10, 1986, Dr. Reynolds examined Kavya; this examination was Dr. Reynolds' only contact with Kavya. Dr. Reynolds also suspected a VSD and recommended an echocardiogram. Dr. Reynolds sent a written report relative to his November 10, 1986 examination of Kavya to Dr. York, which stated, in part, as follows:

Plan: I told Kavya's parents of my findings. I have suggested that echocardiographic study be done and they seem to be agreeable to this. I will keep in touch with you about the results of echocardiography. I have made no definite appointment to see Kavya again, but would like to follow her. I told her parents that it is difficult to judge at this juncture, just how significant her ventricular septal defect is, but told them that only about 10-15% of them eventually need to be closed surgically.
After the recommended echocardiogram was performed at Southern Baptist Hospital on November 13, 1986, Dr. Reynolds interpreted the echocardiogram, determining that the study was negative for VSD and positive for patent ductus arteriosus ("PDA"). Dr. Reynolds report concluded as follows:
Small PDA with continuous left-to-right shunting. Dilated small PFO with left-to-right shuntthis is probably secondary to the increased LA flow associated with the PDA. No VSD.
Dr. Reynolds testified by deposition that follow-up was necessary in order to determine whether the PDA had closed on its own. Thus, he sent an appointment card to the Vaidyanathans, asking them to call his office to schedule an appointment. The Vaidyanathans never scheduled the appointment; Dr. Reynolds never saw Kavya after the first visit on November 10, 1086. Dr. *606 York continued to serve as Kavya's physician for several years; his last treatment of Kavya occurred on December 11, 1989.
On February 1, 1990, Dr. Anderson started treating Kavya. Dr. Anderson requested that Kavya's medical records be sent to her from Dr. York's office, but she apparently received only Kavya's immunization record and the November 10, 1986 letter from Dr. Reynolds to Dr. York. Dr. Anderson stated in her deposition that the Vaidyanathans told her that Kavya had an atrial septal defect ("ASD"), but that it had been resolved by the time she reached seven months of age. The Vaidyanathans were comfortable that there was no on-going heart problem with Kavya by the time she started treating her, Dr. Anderson said. Dr. Anderson treated Kavya until the family moved away from New Orleans in September of 1990; Dr. Anderson last saw Kayva on July 26, 1990.
After the family moved, Kavya was first treated by a Dr. Aurna Parikh, who requested copies of her medical records from her former doctors, but he apparently did not receive a copy of the echocardiogram study. The Vaidyanathans claim that they did not discover the fact that Kavya has a severe medical condition until it was revealed by Dr. Michael Peters, who detected an irregular heart rhythm sometime in August of 1995. Dr. Peters referred Kavya to a cardiologist, Dr. Stuart Kaufman, who diagnosed Kavya as suffering with PDA, an enlarged heart, and possible pulmonary hypertension.
The Vaidyanathans filed a complaint of malpractice against the defendant physicians with the Louisiana Patients' Compensation Fund on June 24, 1996. The defendant physicians all filed exceptions of prescription, which were granted by the trial court. The Vaidyanathans filed the instant appeal.

Applicable law
In Louisiana, the prescriptive period for filing a medical malpractice action is established by LSA-R.S. 9:5628, which provides as follows:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
Despite the strong language of the above statute indicating that no medical malpractice claims can be filed more than three years after the date of the alleged malpractice, the Louisiana Supreme Court has previously held that both the one-year and the three-year time limitations in LSA-R.S. 9:5628 are prescriptive periods, rather than peremptive periods. Hebert v. Doctors Memorial Hospital, 486 So.2d 717 (La.1986). The "single qualification," the Supreme Court said, is the fact "that [the statute] was meant to and does dispense with just one feature normally attendant to prescription, the contra non valentum doctrine's extension of prescription through the discovery rule." Id. at 724; see infra.
The importance of characterizing the three-year period as a prescriptive provision, rather than a peremptive provision, lies in the fact that prescriptive periods are subject to suspension and interruption, while peremptive periods are not subject to suspension and interruption. Townsley v. Brierty, 97-601 (La.App. 3 Cir. 10/27/97), 702 So.2d 1073. However, when a claim is clearly prescribed on its face, the plaintiff bears the burden of proving that some interruption or suspension of the prescriptive period occurred. Wilkes v. Carroll, 30,066 (La.App. 2 Cir. 12/10/97), 704 So.2d 938; In re Medical Review Panel for Claim of Milton, 593 So.2d 795 (La.App. 4 Cir.1992).
In the instant case, the action is clearly prescribed on its face. The instant case was not filed until June 24, 1996. That date is almost ten years after Kavya's last *607 visit with Dr. Reynolds on November 10, 1986; some six and one-half years after Kavya's last visit with Dr. York on December 11, 1989; and almost six years after Kavya's last visit with Dr. Anderson on July 26, 1990; and thus well past both the one-year and the three-year prescriptive periods established by LSA-R.S. 9:5628. Accordingly, the Vaidyanathans have the burden of proving interruption or suspension of prescription. In arguing that prescription should be considered to have been either interrupted or suspended in the instant case, the Vaidyanathans' invoke both the contra non valentum doctrine and the continuing tort doctrine.[1]

Contra non valentum
The contra non valentum doctrine has long been recognized in Louisiana to toll the prescriptive period when a plaintiff is prevented by certain specific situations from timely exercising a right of action. Casenote, "Gover v. Bridges: PrescriptionApplicability of Contra Non Valentum Doctrine to Medical Malpractice Action," 61 Tul. L.Rev. 1541, 1542 (1987). The four types of situations to Which the doctrine applies are as follows:
(1) when courts are legally closed; (2) when administrative or contractual restraints delay the plaintiff's action; (3) when the defendant prevents the plaintiff from bringing suit; and (4) when the plaintiff does not know nor reasonably should know of the cause of action.
Id. at 1542, citing Chaney v. State Through the Department of Health and Human Resources, 432 So.2d 256, 258-59 (La.1983), and Note, "PrescriptionWhat You Don't Know Can Hurt YouLouisiana Adheres to a Three Year Limit on the Discovery Rule," 58 Tul. L.Rev. 1547, 1551-52 & nn. 31-34 (1984). However, the Louisiana legislature, in enacting LSA-R.S. 9:5628, overruled application of the doctrine to toll prescription under the fourth situation listed above, commonly called "the discovery rule." Id, See Chaney, 432 So.2d 256. Because actions involving the first and second of the above situations in medical malpractice cases are extremely rare, the most frequent application of the contra non valentum doctrine to medical malpractice actions involves the third situationthat is, "when the defendant prevents the plaintiff from bringing suit." Id. See also Whitnell v. Menville, 540 So.2d 304 (La.1989); Gover v. Bridges, 497 So.2d 1364 (La.1986); Harvey v. Davis, 432 So.2d 1203 (La.App. 4 Cir.1983).
The Vaidyanathans claim that the prescriptive period for filing their medical malpractice action should be considered to have been interrupted or suspended until August of 1995, when Dr. Peters informed them of Kavya's heart condition, under the third category of contra non valentum because the defendant physicians failed to properly disclose information which have allowed them to file suit in a timely manner. In support of this argument, the Vaidyanathans cite Bunge Corp. v. GATX Corp., 557 So.2d 1376 (La. 1990) for the following proposition:
So long as the defendant with a duty to disclose possesses knowledge and yet fails to act, the tort is a continuing one which renews itself from day to day. Prescription in such a case will not begin to run until the time when plaintiff learns that he has been injured by the failure to disclose.
Id. at 1386.
The first Louisiana Supreme Court case to consider whether a physician's failure to disclose was sufficient to invoke the third category of contra non valentum was Gover, 497 So.2d 1364. That case involved the plaintiffs' claim that they were prevented from filing a medical malpractice action arising out of their mother's death by misrepresentations in a letter from the physician written in response to their request for information. *608 Although the court found that the doctor's letter did indeed contain self-serving misstatements, the court held as follows:
None of the errors or misstatements in [the physician's] letter "effectually prevented" a complete discovery of every fact about her mother's stay in the hospital. Her charts were available. They were never requested.
The kind of reassurance given by this doctor to the daughter of his patient does not reach the level of either fraud or breach of a duty to disclose, which prevented [the plaintiff] from learning of her cause of action. At worst, the letter was self-serving as to the quality of care given [plaintiff's mother] and in error about the plan for biopsy under a local anesthetic and about the signed authorization for a mastectomy.
Id. at 1369 (emphasis added).
The Louisiana Supreme Court also addressed this issue in Rajnowski v. St. Patrick's Hospital, 564 So.2d 671 (La.1990), a case with facts somewhat similar to the instant case to the extent it involved a condition with a child which arose soon after the child's birth. In finding no interruption or suspension of prescription in that case, the court stated as follows:
[The physician] did not prevent plaintiffs from learning of or availing themselves of their cause of action. Plaintiffs were aware of sufficient information to incite their inquiry. They became aware that the child had a seizure disorder when seizures began occurring approximately eight and one half months after the birth of the child. Plaintiffs were also aware that the diabetic condition and complications during delivery were potentially very serious and could have caused the fetus' death. [The physician's] conduct did not preclude plaintiffs from acquiring the medical records of the pregnancy and birth. The records were available at all times, yet plaintiffs did not request them until over two years after the birth of the child.
In conclusion, we find that [the physician] discussed all of his material findings with plaintiffs, and did not withhold any material information. Clearly, his conduct did not rise to the level of concealment, misrepresentation, fraud or ill practices necessary to trigger application of the doctrine of contra non valentum. Moreover, [the physician's] conduct did not prevent plaintiffs' discovery or timely filing of their suit.
Id. at 676. The Louisiana Supreme Court's most recent statement on the issue raised by the instant appeal is found in Whitnell v. Silverman, 95-0112 (La.12/6/96), 686 So.2d 23, in which the court found that a physician's failure to inform the plaintiff of the results of a biopsy report showing a "precancerous lesion" "did not prevent the timely filing of plaintiffs' action intentionally, fraudulently, or by ill practice." Id. at 26.
This court has also addressed this issue. In In re Milton, 593 So.2d 795, the court stated as follows:
[P]rescription will be suspended only where the defendant actively engages in a course of action designed to prevent a plaintiff from acting. That is, the defendant's conduct must be more than mere neglect or a misstatement, it must constitute a fraud, a deliberate concealment or a breach of duty to disclose.
Id. at 797. See also Kinnison v. Adatto, 593 So.2d 654 (La.App. 4 Cir.1991), writ denied, 595 So.2d 659 (La.1992); Whitnell v. Silverman, 592 So.2d 429 (La.App. 4 Cir.1991), writ granted in part and remanded on other grounds, 598 So.2d 345 (La.1992).
Most recently, this court addressed the issue of the application of the third category of contra non valentum in medical malpractice cases in In re Medical Review Panel for the Claim of Brown, 97-2803 (La.App. 4 Cir. 7/1/98), 715 So.2d 1249. In that case, two physicians had removed a benign mass from the right breast of a 17-month-old girl on July 12, 1985. When the girl reached puberty, her right breast failed to develop, she and her parents learned that the breast tissue had been surgically removed. They filed a medical malpractice complaint on May 6, 1994. When the defendant physicians filed an exception of prescription, the girl and her parents sought to invoke the third category *609 of contra non valentum. In rejecting that argument, this court stated as follows:
The Supreme Court has examined the application of [the third contra non valentum exception] to a medical malpractice claim but has not "expressly and directly declared that the third category of contra non valentum applied to medical malpractice cases." Fontenot v. ABC Insurance Co., 95-1707, p. 5 (La.6/7/96), 674 So.2d 960, 963; Claim of Aron, 96-2665, p. 4 (La.App. 4 Cir. 5/21/97), 695 So.2d 553, 556-557, citing Rajnowski v. St. Patrick's Hospital, 564 So.2d 671 (La.1990). However, the Supreme Court has stated that a physician's conduct must rise to the level of concealment, misrepresentation, fraud, or ill practices under that exception. Fontenot v. ABC Insurance Co., 674 So.2d at 963; Claim of Aron, 695 So.2d at 557.
Id. at 2.
In the instant case, the Vaidyanathans have failed to prove any fraudulent or intentional concealment on the part of any of the defendant physicians. In fact, the Vaidyanathans admitted in oral argument before this court that none of the defendant physician's alleged actions amounted to fraud or intentional concealment. As shown by the discussion which follows, none of the Vaidyanathans' allegations against any of the defendant physicians is sufficient to invoke application of the third category of contra non valentum.
Concerning Dr. York, who was Kavya's treating physician at the time the heart murmur was initially discovered, the Vaidyanathans claim that he never told them that Dr. Reynolds wanted to follow-up on Kavya's heart problem. Moreover, they claim that Dr. Reynolds failed to include the echocardiogram among Kavya's medical records when they were requested by Dr. Anderson. Neither of those actions can be considered to constitute fraud or intentional concealment of Kavya's condition.
Concerning Dr. Reynolds, the Vaidyanathans admitted they never saw Dr. Reynolds after the initial visit on November 3, 1986; thus, he never had an opportunity to tell them the results of the procedure. In fact, the Vaidyanathans acknowledge that Dr. Reynolds sent them an appointment card, and that they failed to respond. Additionally, Dr. Reynolds properly sent a report to Dr. York. None of his actions can be characterized as fraud or intentional concealment.
Concerning Dr. Anderson, the Vaidyanathans claim that Dr. Anderson committed a single act of negligence in failing to further investigate after reading Dr. Reynolds' letter to Dr. York and discovering that she had not received the echocardiogram. No other acts of negligence on the part of Dr. Anderson are even alleged. Certainly the Vaidynathans' claim is insufficient to even suggest that Dr. Anderson's actions on this issue were anything other than negligent.
Under the circumstances, the Vaidyanathans have failed to prove application of the third category of contra non valentum based on fraudulent or intentional concealment of information.

Continuing tort
Second, the Vaidyanathans argue that the defendant physicians' alleged failure to disclose constituted a continuing tort which suspended prescription. In support of this argument, the Vaidyanathans cite Bunge Corp., 557 So.2d 1376, a case against the contractor who built a grain storage tank, in which the plaintiffs alleged redhibition, express and implied warranty, tort, contract, res ipsa loquitur, and strict liability causing rupture of the tank.
Under Louisiana law, a continuing tort occurs only so long as both the tortious conduct and the damages continue. Crawford v. Howard, 539 So.2d 735 (La.App. 3 Cir.), writ denied, 541 So.2d 840 (La.1989). In other words, when a continuous tort is alleged, "prescription does not commence until the tortious conduct is abated," meaning the plaintiffs must allege both continuous action and continuous damages. Brown, 97-2803, p. 2. In both Brown and Crawford, the court found no continuing tort because the defendant physician's alleged tortious conduct had ceased on the date the physician last treated the patient. On the other hand, in Chiasson v. Doe, 618 So.2d 38 (La.App. 3 Cir.), writ denied, 624 So.2d 1225 (La.1993), the court found that the plaintiffs had properly *610 alleged a continuing tort in a medical malpractice case because they had alleged both continuing treatment and continuing damages.
Like the plaintiffs in Brown and Crawford, the Vaidyanathans allege only that then damages have continued, not that the alleged tortious conduct of any of the defendant physicians continued. Thus, prescription was not suspended under the continuing tort doctrine.

Conclusion
Accordingly, the trial court judgment granting the exception of prescription on behalf of the defendant physicians is affirmed.
AFFIRMED.
NOTES
[1] Neither of these arguments really apply to Dr. Anderson, whom the Vaidyanathans acknowledge committed only a single act of negligence by failing to follow up by learning more about the echocardiogram after reading Dr. Reynolds letter to Dr. York. However, they claim that prescription was interrupted by timely-filed actions against Dr. Reynolds and Dr. York, who are joint tortfeasors with Dr. Anderson. We note that prescription which has already accrued cannot be interrupted. Masters v. Fields, 27,924 (La.App. 2 Cir. 1/24/96), 666 So.2d 1333, Moreover, since we find that prescription was not interrupted or suspended against Dr. Reynolds and Dr. York, the suit filed against them did not interrupt prescription against Dr. Anderson.