635 So.2d 1158 (1994)
Anthony J. GENDUSA, Jr.
v.
The CITY OF NEW ORLEANS.
No. 93-CA-1527.
Court of Appeal of Louisiana, Fourth Circuit.
February 25, 1994.
Rehearing Denied May 12, 1994.
*1159 Bruce M. Danner, Metairie, for plaintiff/appellee.
Michael J. Laughlin, Deputy Chief Atty., Philip C. Ciaccio, Jr., Chief of Civ. Litigation, Kathy L. Torregano, City Atty., New Orleans, for defendant/appellant.
Before BARRY, KLEES, WARD, JONES and WALTZER, JJ.
WALTZER, Judge.
This is an appeal from a judgment of the Civil District Court for the Parish of Orleans, the Honorable Louis A. DiRosa, Judge, presiding, granting to Anthony J. Gendusa, Jr. recovery of architectural fees based on a contract and amendment thereto with the City of New Orleans providing for development of Brechtel Memorial Park. Appellee by answer appeals from that portion of the trial court's judgment denying his petition for declaratory relief. Appellee also seeks damages for frivolous appeal.
On 6 May 1971, articles of incorporation for Anthony J. Gendusa, Jr., AIA, Architect, Incorporated were filed with the Louisiana Secretary of State. These articles provided for the issuance of 100 shares of stock of only one class.
On 15 June 1973, the City of New Orleans (the City) entered into a contract with Anthony J. Gendusa, Jr., AIA, Architect, Inc. to provide architectural design services in connection with the City's development of Brechtel Memorial Park. In consideration of the corporation's architectural services, the City agreed to pay the corporation a fixed fee of eight percent of the Park's construction cost.
The development proceeded through Phase 1 and part of Phase 2, and the corporation was compensated fully according to the terms of the contract.
During this time, on 17 June 1974, a partition of community assets was made between Anthony J. Gendusa, Jr. and his wife, Mary Patricia O'Neill, by the terms of which O'Neill transferred to Gendusa all 100 outstanding *1160 shares of the stock of Anthony J. Gendusa, Jr., AIA, Architect, Incorporated.
On 10 April 1978, Gendusa submitted for signature by the City's representative an amendment to the original contract. The amendment, prepared by Gendusa, recites that it amends a contract "Between City of New Orleans and Anthony J. Gendusa, Jr., dated 15 June 1973". The amendment was signed by Mayor Moon Landrieu and by Anthony J. Gendusa, Jr. individually. The amendment makes no reference to the Gendusa corporation. The 1978 amendment specifies that the project will be completed in eight phases, which phases may occur over "the next several years."
On 16 August 1989, the Secretary of State issued a Certificate of Dissolution of Anthony J. Gendusa, Jr., AIA, Architect, Incorporated, verifying that an affidavit of dissolution dated 14 August 1989 was filed with the office of the Secretary of State.
The City did not utilize the plaintiff's services for the completion of Phase 2. In late 1983, the City selected the Caplinger Group to perform the remaining portion of the Phase 2 design services.[1] In March, 1986, the City entered into a contract with Caplinger to provide these services for Phase 3, and in April, 1986 for Phase 3A.
The original contract between the City and the Gendusa corporation provides for termination by either party[2]:
ARTICLE 8 TERMINATION OF AGREEMENT: "This agreement may be terminated by either party upon seven days' written notice should the other party fail substantially to perform in accordance with its terms through no fault of the other. In the event of termination due to the fault of others than the Architect, the Architect shall be paid his compensation for services performed to termination date, including Reimbursable Expenses then due and all terminal expenses.
The parties stipulated that the cumulative costs of construction were $160,000 (the remainder of Phase 2); $680,000 (Phase 3) and $184,000 (Phase 3A).
The trial court found that because the City never formally terminated its contract with Gendusa or notified him that his services were no longer required, it was obliged to pay Gendusa compensation totalling $56,028.01[3] *1161 for the work done without plaintiff's knowledge by subsequent designers.

CLAIM FOR DECLARATORY RELIEF
The trial judge rejected Gendusa's contention that the 1978 amendment gave him an exclusive contract for architectural services on all phases of Brechtel Park., and denied plaintiff's request for declaratory relief. In his answer to the City's appeal, Gendusa appeals from this portion of the trial court's judgment. The trial court's conclusion that the 1973 contract and 1978 amendment do not give the Gendusa interests an exclusive design contract for future development of Brechtel Memorial Park is supported by the evidence in the record. We find no manifest error in the judgment denying plaintiff's claim for declaratory judgment, and affirm. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880 (La.1993).

DEFENDANT ASSIGNS AS ERROR THE TRIAL COURT'S FAILURE TO GRANT THE CITY'S EXCEPTION OF PRESCRIPTION
The parties agree that if Mr. Gendusa is entitled to payment of professional fees in connection with Phases 2, 3 and 3A of the Brechtel Park project, these fees were due no later than 1 December, 1987, when work on Phase 3A was completed. Plaintiff filed suit 18 September 1991.
The City of New Orleans appeals from the trial court's denial of its exception of prescription. The City pleads the three year liberative prescription applicable to claims for professional fees. LSA-C.C. art. 3494. This prescription applies to actions "for the recovery of compensation for services rendered, including payment of ... professional fees."
Gendusa contends that his action is for breach of contract, a personal action which prescribes in ten years. LSA-C.C. 3499.
The character of an action disclosed in the pleadings determines the prescriptive period applicable to that action. Starns v. Emmons, 538 So.2d 275, 277 (La.1989). The Court's duty is to analyze the allegations in the petition and the damages sought to determine whether the action sounds in contract. In Starns, plaintiff sued for rent arrearages under a lease agreement. The court held that the mere existence of an underlying contract does not transform a claim prescribed in three years under article 3494 to a contract claim prescribing in 10 years under article 3499. To do so, the court says, would render 3494 meaningless, since virtually all of the actions referred to therein arise from a contractual relationship of some kind. Because Starns' claim was for payment of past due rent, the claim was subject to the three year prescription for claims for rent.
In Wells & Parker Architects, Inc. v. Monroe-McKeen Plaza Housing Development Corp, 556 So.2d 191 (La.App. 2nd Cir.1990), plaintiff architect billed defendant over a period of time, and defendant paid all but the final bill. The statements were for services actually rendered by the plaintiff pursuant to a contract between the parties. The contract fixed only a maximum hourly rate and maximum total fee for the services; actual payments were based upon the amount of work performed by the architects as billed through their invoices. The fees were paid as incurred, creating an open account. The court applied article 3494 and held that the claim prescribed three years after the date of the final bill. The court treated the claim as one on an open account.
Wells and Parker's claim was for services rendered. While Gendusa's claim for damages can be measured in terms of the fee he arguably lost, his claim is not one for services rendered. It is a claim for breach of contract, caused when the City frustrated Gendusa's ability to perform his contractual services, as to which article 3499's ten year *1162 prescription applies. Since plaintiff contends that his attempt to render services was frustrated by the City's unilateral actions, the three year prescription of article 3494 does not apply.

DEFENDANT ASSIGNS AS ERROR THE TRIAL COURT'S FAILURE TO GRANT THE CITY'S EXCEPTION OF NO RIGHT OF ACTION:
The City of New Orleans appeals from the trial court's denial of its exception of no right of action. At issue is whether Mr. Gendusa, individually, has a right to bring suit on a contract between the City and the corporation, now liquidated by affidavit, of which he was the sole shareholder, director and officer.
The trial court found that the 1973 contract and its 1978 amendment were entered into by and between "plaintiff, an Architect," and "the City of New Orleans." This finding is contrary to the plain terms of the 1973 contract, prepared by the plaintiff's office, which names Anthony J. Gendusa, Jr., AIA, Architect, Inc. as the architect for the project. That agreement is signed by Mr. Gendusa above a signature line that reads "Anthony J. Gendusa, Jr., AIA, Architect, Inc." There is no evidence of record that Mr. Gendusa, individually, was a party to the 1973 contract, and the court's conclusion to that effect is manifestly erroneous and clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Rosell v. ESCO, 549 So.2d 840 (La.1989).
The incorporation documents were filed with the office of the Louisiana Secretary of State on 6 May 1971. From that time, the corporation was a viable, separate entity, able to contract with the City, and to amend its original contract obligations.
Subsequent to the 1978 amendment, the Louisiana legislature passed Act 225 of 1979, effective 9 July 1979, providing for professional architectural corporations, and requiring architects operating in corporate form as of that effective date to comply with the provisions of the Act within 90 days of the effective date. LSA-R.S. 12:1100.B. The Act provides further that "[a]ll terms used both in this Chapter and in Chapter 1 of this Title [the Business Corporation Law] should have the same meaning when used in this Chapter, as when used in Chapter 1." LSA R.S. 12:1086.B. Section 1099 of the Professional Architectural Corporations Act provides additional grounds for involuntary and for voluntary dissolution of the professional architectural corporation, which are inapplicable to the facts of this case. The Act does not limit applicability to professional architectural corporations of the dissolution provisions contained in the Business Corporation Law.
LSA R.S. 12:142.1 provides for corporate dissolution by affidavit, without formal liquidation:
"A. In addition to all other methods of dissolution, if the corporation is not doing business and owes no debts, it may be dissolved by filing an affidavit with the secretary of state executed by the shareholders,..., attesting to such facts and requesting that the corporation be dissolved. Thereafter, the shareholders, ..., shall be personally liable for any debts or claims, if any, against the corporation in proportion to their ownership in the shares of the corporation." (Emphasis added)
This provision was added in 1982 to provide a means of avoiding the costs and delays of a formal liquidation, but is limited in its application to corporations no longer doing business. While the statute provides that shareholders are to assume any lingering corporate debts, there is no provision allowing survival of the corporation's inchoate claims. Where a corporation has such outstanding claims or obligations, the appropriate method of dissolution is through a voluntary liquidation, with appointment of a liquidator and the orderly collection of claims, payment of debts and transfer of assets.
The record shows that as early as June, 1986, Gendusa contacted the City concerning *1163 his claim that the 1978 amendment gave him rights to compensation arising out of future phases of the Brechtel Park contract. The record also contains copies of letters on the letterhead "Anthony J. Gendusa, Jr. AIA Architect" to various city agencies concerning this claim. The letters of 14 May 1987, 28 October 1987, 30 January 1988, and 9 December 1988 antedate the corporate dissolution. Following Gendusa's dissolution of the corporation by affidavit, he wrote letters to the City dated 3 November 1989, 8 January 1990, and 26 March 1990. Therefore, the claim for those revenues was known to Gendusa, the corporation's sole shareholder, well before the dissolution by affidavit was accomplished. There is no evidence that Gendusa discovered the claim only after the corporate dissolution was accomplished.
Gendusa chose in 1989 to avail himself of the provisions of LSA R.S. 12:142.1, and to avoid the liquidation procedure. In so doing, he certified that his corporation was out of business at that time. He chose not to take advantage of the liquidation procedure which would have preserved the corporation's cause of action against the City. Had he proceeded with a § 142 voluntary liquidation, a liquidator would have been vested with the authority to demand, collect, sue for and recover in the name of the corporation, the debts and property of the corporation, and to compromise, compound and settle claims of the corporation on such terms and conditions as the liquidator deems best. LSA R.S. 12:145.
This result is consistent with the Louisiana Code of Civil Procedure. The liquidator appointed by a Louisiana court is the proper plaintiff to sue to enforce a right of the corporation. La.C.Civ.P. art. 692.
Section 142.1 provides for survival of claims against the corporation liquidated by affidavit, but does not provide for survival of the corporation's own claims. Gendusa suggests an analogy between the survival of corporate debts and that of corporate claims. We do not find the concepts to be analogous.
Survival of creditors' claims against a dissolved corporation arises from the public policy that protects the interest of corporate creditors in corporate assets even beyond dissolution. There is no correlative public policy and no statutory provision to protect a sole shareholder, in possession of all relevant information concerning his corporation's inchoate claim, from the loss of that right through his own voluntary dissolution of the corporation by affidavit.
Business corporations are created by statute, and their existence and operations are regulated by the business corporation law and any special professional corporation statute that may be applicable. As a statutory creation, the business or professional corporation has no rights outside the four corners of the enabling statute. Absent language in LSA R.S. 12:142.1 allowing for survival of inchoate corporate claims, we find no authority compelling such a result. Where, as here, there is no showing that the shareholder was unaware of the existence of the inchoate claim at the time of the corporate dissolution, there is no legal or equitable reason to allow him to prosecute as an individual the corporation's claim for breach of the contract. We find that as a matter of law, the trial court was manifestly erroneous and clearly wrong in denying defendant's exception of no right of action.

DOES THE AMENDED CONTRACT OF APRIL, 1978, AFFECT THE EXCEPTION OF NO RIGHT OF ACTION?
The contract of 15 June 1973 identifies the architect as "Anthony J. Gendusa, Jr., AIA, Architect, Inc." The contract defines the project as development of "recreational facilities as agreed to by the City, Parkway Commission and Brechtel Memorial Park Board at Brechtel Memorial Park bounded by Behrman Highway, Tullis, Lennox Blvd., Branch of Algiers outfall drainage canal and Algiers outfall drainage canal and Brechtel Memorial Park."
On 10 April 1978 an "Amendment to Contract" was entered into by the City and refers to the original contract of 15 June 1973. Despite the clear identifying language *1164 of the 1973 contract, the 1978 amendment refers to the 1973 contract as being "Between City of New Orleans and Anthony J. Gendusa, Jr." The amendment is signed by Mr. Gendusa above a signature line that reads, "Anthony J. Gendusa, Jr." Neither the text nor the caption mentions "Anthony J. Gendusa, Jr., AIA, Architect, Inc."
The amendment purports to extend the contract for services to apply to "developing Plans and Specifications and other needed information for all eight (8) phases of this Project. These services will occur after the funding of each phase as directed by the Owner. The phasing may occur over the next several years. Fee shall be fixed at eight percent (8%) of cost of construction."
In 1978, the Gendusa corporation was in existence. The parties evidenced an intention to amend the formerly executed and still effective 1973 contract. There is no language in the contract showing an intent to substitute Anthony J. Gendusa, individually, for the Gendusa architectural corporation. Gendusa was questioned at trial concerning the amendment, and did not contend that it was intended to make such a substitution. He testified that the amendment was needed to "fine tune the relationship" between Gendusa and the City and to insure that he would be the design architect for all eight phases of the Brechtel Park project. Gendusa testified that his office typed both the 1973 and 1978 contracts, in consultation with the City. Any ambiguity, therefore, in the contracts, should be construed against Gendusa. In case of doubt that otherwise cannot be resolved, a provision in a contract must be interpreted against the party who furnished its text. La.C.C. art. 2056.
The trial court's judgment does not address this issue specifically; however, we find that the judgment rendered below granting recovery to Anthony J. Gendusa, is manifestly erroneous and clearly wrong, and we reverse. Rosell v. ESCO, supra; Arceneaux v. Domingue, supra; Stobart v. State Through Dept of Transp. and Development, supra.
Appellee's request for damages upon his assertion that the City's appeal is frivolous is without merit, and is hereby denied.
Because of our holding herein, we do not reach the City's "Third Assignment of Error."[4]
REVERSED IN PART.
AFFIRMED IN PART.
KLEES, J., concurs.
JONES, J., concurs in the reasons assigned by Klees, J.
BARRY, J., dissents in part with reasons.
KLEES, Judge, concurring.
In electing to dissolve the corporation by affidavit, Mr. Gendusa avoided the complications and costs involved with formal liquidation. Mr. Gendusa also, however, forfeited some of the benefits associated with formal liquidation. Among the advantages surrendered by Mr. Gendusa was the ability to have a liquidator pursue the corporation's causes of action. Therefore, I concur in the result reached by the majority.
BARRY, Judge, dissenting in part with reasons.
The majority holds that because Mr. Gendusa did not liquidate his corporation, he has no standing to assert a claim of the dissolved corporation. I respectfully dissent.
The Gendusa corporation (a one person corporation) was not in liquidation at the time the cause of action arose. In fact, the corporation was never placed in liquidation an action that contemplates creditors seeking rights to the assets of the corporation.
The Gendusa corporation was merely dissolved under LSA-R.S. 12:142.1 which permits *1165 a speedy dissolution by affidavit when there are no corporate debts and the corporation is inactive.
The statute provides that a shareholder(s) shall be personally liable for any debts or claims of the dissolved corporation. Conversely, it follows that a shareholder(s) should also have the right to pursue any unliquidated claim owed to the corporation. To hold otherwise, as the majority concludes, automatically extinguishes a valid claim forever. Mr. Gendusa could not reincorporate in order to protect his vested interest in the City's contract.
Mr. Gendusa had a one person corporation. That fact was recognized when the contract was amended in April 1978 and it specifically refers to the original contract which included the magic "Inc."
I would affirm the judgment of the trial court.
NOTES
[1] The 1973 contract provides:

ARTICLE 9 OWNERSHIP OF DOCUMENTS:
"Drawings and Specifications as instruments of service are and shall remain the property of the Architect whether the Project for which they are made is executed or not. They are not to be used by the Owner on other projects or extensions to this Project except by agreement in writing and with appropriate compensation to the Architect."
Plaintiff testified that while Caplinger's shelter design was similar to his own design, he had been fully compensated for his master plan design, and did not claim that the City or Caplinger used his drawings and specifications improperly or violated this provision of the contract.
[2] The 1973 contract provides:

"All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law." § 11.1.
"[Q]uestions of procedural arbitrability should not be decided by the courts, without having been submitted to the arbitrator, WHEN A PARTY SUES TO ENFORCE AN ARBITRATION AGREEMENT." Bartley v. Jefferson Parish School Board, 302 So.2d 280 (La.1974). (Emphasis added)
LSA R.S. 9:4202 provides:
"If any suit ... be brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which suit is pending, upon being satisfied that the issue involved in the suit or proceedings is referable to arbitration under such an agreement, shall ON APPLICATION OF ONE OF THE PARTIES stay the trial of the action until an arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with the arbitration." (Emphasis added)
Since neither party applied for arbitration, it has been waived.
[3] Legal interest was awarded from 1 October 1986 until paid on $8,449.28, and from 1 December 1987 until paid on $47,578.73.
[4] The City as its third assignment of error contends that the contract as amended violated the Home Rule Charter of the City of New Orleans and, as such, is illegal and unenforceable.