641 So.2d 1016 (1994)
Carl Wayne WIMBERLY and Jacqueline Lee, Plaintiffs-Appellants,
v.
SCHUMPERT MEDICAL CENTER, et al. a/k/a Sisters of Charity of the Incarnate Word, Defendant-Appellee.
No. 25957-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1994.
*1018 Carl Wayne Wimberly, in pro. per.
Pugh, Pugh & Pugh by Robert G. Pugh, Jr., Shreveport, for Donald G. Mack and Harvey L. Carter, defendants-appellees.
Lunn, Irion, Johnson, Salley & Carlisle by James B. Gardner, Shreveport, for Sisters of Charity d/b/a Schumpert Medical Center defendant-appellee.
Before MARVIN, C.J., and SEXTON and HIGHTOWER, JJ.
MARVIN, Chief Judge.
In this medical malpractice action for the wrongful death of his four-month-old son, the father, appearing here and below as a pro se litigant, appeals a judgment sustaining the defendants' peremptory exception of prescription. LRS 9:5628 A and 40:1299.47 A(2)(a). In three assignments, the father primarily contends that the circumstances warrant application of the doctrine of contra non valentem to suspend prescription.
Disagreeing with the father on all assignments, we affirm.

FACTS
On December 19, 1989, the mother, Jacqueline Lee, took her four-month-old son, Carl Wayne Wimberly II, to see defendant, Dr. Donald Eugene Mack, for treatment for a cold. She had previously taken her son to Dr. Harvey L. Carter for treatment of the same symptoms. Dr. Mack recommended that the child be hospitalized for several days to "clear the cold out of him." Lee called other relatives of the child and the baby's father, appellant Carl Wayne Wimberly, who went to the Schumpert Medical Center to pay $700 for his son's admission.
Later that night Nurse Angela Nelson went to the infant's room and made several attempts to insert an intravenous tube in the infant's leg. Other relatives stepped out of the room, while Wimberly and the baby's maternal grandfather remained, observing the procedure. Seeing the baby's arms stretch out and his eyes close, the grandfather asked Nelson about the baby's reaction. Nurse Nelson quickly checked the infant's vital signs and began cardiopulmonary resuscitation. Wimberly ran out of the room to summon help. Dr. Mack responded, asking what happened. Wimberly replied, "You tell me. You're the doctor."
Dr. Mack and others attended the child, but soon announced they had done all they could but that the infant died from cardiac arrest, explaining that the child had a sudden heart attack. Wimberly's remark that that explanation did not make sense to him because his son had appeared to be healthy, apparently did not evoke further comment.
*1019 On December 1, 1990, the parents mailed their medical malpractice claim to the board in accord with the medical malpractice statute, naming Dr. Mack, Nurse Nelson, and Schumpert Medical Center as defendants before the board. LRS 40:1299.47 B(1)(a)(i). Dr. Carter, who had earlier seen the infant, was not named as a defendant before the board, but was joined as a defendant in the later action the parents instituted in the trial court.
The separate handwritten claims, signed on December 1, 1990, by each parent were received by the board on December 5, 1990. Each alleged similar factual circumstances stating:
We want to know the truth about our son and want to be awarded damages. * * * There's a deadline Dec. 19, 1990, we can't get any lawyer to take our case. Please help us.
The medical review panel rendered its opinion finding the named defendants free from fault or negligence on March 18, 1992. Each parent received a copy of the panel's opinion March 23, but did not institute the action in the trial court until December 14, 1992.
Each defendant filed an exception asserting prescription against the action in the trial court. Dr. Carter also filed an exception of prematurity. The parents filed handwritten opposition to the exceptions and a brief invoking contra non valentem and citing cases in support of their argument. Northwest Louisiana Legal Services, Inc., filed a typewritten brief supporting the arguments of the parents below and here, withdrawing here from further representation when the brief was filed. The minutes of the court reflect that argument was held on the amended exception of prescription on February 22, 1993. Plaintiffs were allowed an extension to obtain legal counsel who thereafter submitted the typewritten brief. The trial court judgment was signed on June 24, 1993. The record does not contain a transcript of the "argument" or hearing on the exceptions of prescription.
Only the father appeals the judgment dismissing the action on the exceptions of prescription.

MEDICAL MALPRACTICE
Actions for medical malpractice against certain health care providers, such as these defendants, are governed by special laws, Part XXIII of Chapter 5, Miscellaneous Health Provisions of LRS Title 40, §§ 1299.41, et seq., and by LRS 9:5628, which states the liberative prescription applicable to actions for medical malpractice under Title 40. These statutes required the parents to bring their claim for medical review within one year of the date of the discovery of the alleged malpractice, and in all events within three years from the date the alleged malpractice occurred. LRS 9:5628.
Unlike the codal rules which generally apply to the effect of the filing of an action on liberative prescription (that the commencement of the action interrupts the liberative prescription, causing the entire period to run anew), the Medical Malpractice Law specifically provides that filing of a medical malpractice claim with the board only suspends the time within which suit must be instituted in a district court. Compare La. C.C. Arts. 3466 and 3472. When prescription is interrupted, the time that has run on the period of prescription before interruption is not counted. Art. 3466. When prescription is suspended, the period of suspension is not counted toward the accrual of prescription. The time that has run before and after the period of suspension is counted. Art. 3472. See Brister v. Southern Baptist Hospitals, 555 So.2d 641 (La.App. 4th Cir.1989).
Once the medical malpractice claim is filed with the board, the liberative prescription then accruing against that claim is suspended. The period of suspension does not terminate until 90 days have elapsed following notification to the claimant or his attorney of the issuance of the opinion by the medical review panel. LRS 40:1299.47 A(2)(a).
Each parent signed his or her claim for medical review and for damages on December 1, 1990, noting therein the "deadline" of December 19, 1990, the anniversary of the alleged malpractice and death of their child. If the medical malpractice claim is mailed by *1020 certified or registered mail, the date of mailing is the date of receipt and filing of the claim by the board. Otherwise, the actual date of receipt is considered the date of filing. LRS 40:1299.47 A(2)(b). We cannot determine from the appellate record the exact date the claims were "filed" with the board.
In any event, the parents' claim to the board, being filed on either December 1 (the date of mailing) or on December 5 (the date of receipt) and within one year of the alleged malpractice and death of the child, was timely. The filing of the claim caused the statutory period of suspension of the liberative prescription to begin.
Ninety days after the parents received the opinion of the medical review panel on March 23, 1992, the statutory period of the suspension terminated and prescription again began to accrue. The claims of medical malpractice were filed with the board in December 1990, either 18 days or 14 days before the anniversary of the alleged wrongful death. Ninety days from March 23, 1992, elapsed about June 23, 1992. Whether we add 14 days (from December 5 to December 19), 18 days, or even 100 days to the ninety-day period of suspension, the action for the wrongful death, in these circumstances, filed in the district court on December 14, 1992, is untimely, unless the circumstances warrant application of the equitable doctrine of contra non valentem.

CONTRA NON VALENTEM
The father argues the applicability of contra non valentem agere nulla currit praescriptio. A prescriptive statute operates from the date of a plaintiff's discovery of his or her cause of action. Contra non valentem is invoked to suspend the running of prescription during the period in which the cause of action was not known or reasonably knowable to a plaintiff. Griffin v. Kinberger, 507 So.2d 821 (La.1987); Corsey v. State Dept. of Corrections, 375 So.2d 1319 (La. 1979).
Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent, or unreasonable. Griffin, supra; Young v. Clement, 367 So.2d 828 (La.1979); Maung-U v. May, 556 So.2d 221 (La.App. 2d Cir.1990).
"Constructive" knowledge, as distinguished from "actual" knowledge, when found, is the starting point of the prescriptive period where contra non valentem is urged. Maung-U, supra. Constructive knowledge sufficient to trigger prescription is more than a mere apprehension that something might be wrong, but less than actual knowledge that something was wrong. Liberative prescription is deemed to begin running when it can be objectively determined that the exercise of reasonable diligence would have alerted a reasonably minded plaintiff of the reasonable possibility that the condition may have been caused by medical malpractice. Griffin, supra; Cordova v. Hartford Acc. & Indem. Co., 387 So.2d 574 (La.1980); Maung-U, supra.
The proper focus is on the reasonableness of the tort victim's action or inaction. Griffin, supra; Maung-U, supra. When a plaintiff has knowledge strongly suggesting that the untoward result may have been caused by improper treatment and there is no indication that the health care providers attempted to mislead or cover up information that is available to a plaintiff through inquiry or professional medical or legal advice, then the facts and cause of action are deemed reasonably knowable to plaintiffs. A medical malpractice plaintiff's inaction for more than a year under such circumstances is deemed unreasonable. Maung-U, supra.
Because the parents sued in the district court within the three-year period from the date of the alleged wrongful death, the critical question is when the parents had sufficient knowledge to begin the running of the one-year period. The date of death is not always the controlling date in a wrongful death action.
Plaintiffs' December 1990 filings with the board clearly assert a claim for damages for medical malpractice and show plaintiffs' knowledge that the "deadline" or liberative prescriptive period for instituting *1021 such a claim "Dec. 19, 1990," was the anniversary of the child's death. Moreover, by stating, "We can't get a lawyer to take our case," plaintiffs cannot deny that they consulted with, and made attempts to hire, one or more lawyers about their medical malpractice claims before filing their claims in December 1990.
On the date of death, the father did not accept the explanation that a healthy four-month-old could have a sudden heart attack. The father's claim suggested the fault of either or both the nurse and the IV-drip machine. Under the circumstances of this record, we must conclude that, at least, on, or within a few months after, December 19, 1989, these plaintiffs had the requisite constructive knowledge of their claim and actual knowledge of the "Dec. 19, 1990, deadline" for filing their medical malpractice claims with the board.
The trial court did not accept Wimberly's contention that he did not "discover" or have constructive knowledge of his claim until the last few months of 1990, so as to warrant the application of contra non valentem to find his district court action timely.

ATTACHMENT OF OATHS
Wimberly contends prescription did not begin to accrue further after March 23, 1992, because the notification he received of the medical review panel's opinion was not proper under the statute. He complains that the oath of each panelist was not attached to the copy of the opinion mailed to him. Wimberly relies on LRS 40:1299.47 C(5) which requires that the original oaths taken by the voting panelists and the attorney chairman be attached to the opinion rendered by the panel. He concludes that receipt of an "improper" opinion is no receipt at all.
We emphasize some of the language of LRS 40:1299.47 A(2)(a) and J, which state in part:
A.(2)(a) The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, ...
* * * * * *
J. The chairman shall submit a copy of the panel's report to ... all parties and attorneys by registered or certified mail within five days after the panel renders its opinion.
Wimberly's arguments on the statutory requisites and the cases upon which he relies are misplaced and without merit. Galloway v. Baton Rouge General Hospital, 602 So.2d 1003 (La.1992), requires the statute to be strictly construed but does not address attaching the oaths to a copy of the opinion. Also factually inapplicable is Moore v. Curry, 577 So.2d 824 (La.App. 2d Cir.1991), writ denied, which concerns only the admissibility of the oaths into evidence.
The statute does not require that the oaths be attached to the "notification," or to "a copy of the panel's report" that is required to be mailed or sent to a claimant or his attorney. Subsection C(5) of the statute simply requires that the oaths of the panelists "shall be attached to the opinion rendered by the panel." Our emphasis. The "opinion" of the panel to which the oaths are to be attached is required to "be in writing and signed by the panelists." LRS 40:1299.47 G, emphasis ours.
We conclude the legislature has distinguished the original "signed" opinion, which together with other material obviously comprises a record of the board, from the "notification... of the issuance of the opinion by the ... panel" and the "copy of the panel's report" that is to be sent to the claimant or his attorney. We find no impropriety.

DUE PROCESS
Wimberly also asserts he was denied "due process" by the application of LRS 40:1299.47 to his case. Wimberly seeks to contrast the form of the citation or notice given by the medical review board to a defendant against whom a medical malpractice claim is filed (citing them to respond to the claim), with the notice given to plaintiffs, and to all parties, after the panel renders its *1022 opinion. A cover letter or notice with the copy of the opinion that is mailed by the board is in the record addressed to plaintiffs. The same letter is in the record addressed to defendants that Wimberly named before the board. Wimberly complains that the letter-notice to plaintiffs [and defendants, we add] does not alert them to the applicable prescription. Neither does a notice of judgment that is mailed to litigants by a district court, as required by the Code of Civil Procedure, alert the parties of the delays for appealing the judgment. Wimberly suggests the language in the citation form that a medical malpractice defendant contact his insurer or a lawyer is unfair. We note that this language is common to the form of citation that many district and city courts employ, which often is included in our appellate records. Wimberly, like a claimant in any action, cannot complain that he was not given the formal citation that the board was required to give the defendants whom Wimberly named in his claim. Wimberly had "contacted" one or more lawyers about his claim before he filed it, according to his pleadings. Wimberly does not otherwise suggest any "unfairness" in the proceedings before the board and review panel.
We find no merit in Wimberly's "due process" argument.

DECREE
At appellants' cost, we AFFIRM.