The KENDALL COMPANY

v.

SOUTHERN MEDICAL SUPPLIES, INC.

Civil Action No. 94–150.

United States District Court, E.D. Louisiana.

Jan. 30, 1996.

484

Frederick William Bradley, Kathleen Friel Ketchum, Liskow & Lewis, New Orleans, LA, for The Kendall Co.

Robert T. Garrity, Jr., Robert T. Garrity, A.P.L.C., Harahan, LA and Richard Edgar Anderson, Bencomo & Associates, New Orleans, LA, for Southern Medical Supplies, Inc., Lawrence Fakier, Gerard Bourgeois.

Robert A. Kutcher, Bronfin & Heller, New Orleans, LA, for Grandville Corporation.

Robert T. Garrity, Jr., Robert T. Garrity, A.P.L.C., Harahan, LA, for Southern Medical Supplies, Inc.

George Burton Jurgens, III, Scott Thomas Zander, Nesser, King & LeBlanc, New Orleans, LA, for Joseph Fern.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

VANCE, District Judge.

This matter is before the Court on the motion of defendant, Southern Medical Sup-

plies, Inc. ("SMS"), for summary judgment. For the reasons stated below, the Court DENIES defendant's motion.

## I. BACKGROUND

The Kendall Company is a manufacturer and distributor of medical supplies. Since 1988, defendant Southern Medical Supplies, Inc. ("SMS") has been an authorized distributor of Kendall's products. (Defendant's Ex. 8, Aff. of Jack Henry, Vice President of Kendall.) Kendall's claim against SMS is for fraudulently submitting claims for rebates to Kendall based on sham sales of Kendall's Kerlix product to Louisiana hospitals. (Complaint at ¶¶ 9–10.)

Kendall had instituted a rebate credit system under which it permitted distributors to buy its products at significantly discounted prices, provided they sold the product to certain preferred customers, such as the State of Louisiana. (Defendant's Ex. 8, Aff. of Jack Henry, at ¶ 3.) The distributor obtained the discounted price by submitting to Kendall's rebate processing department a claim form with a copy of its invoice to the preferred customer. Kendall claims that SMS submitted false invoices claiming sales to Louisiana hospitals that were actually made to a third party. SMS admits for the purposes of its motion that it diverted Kendall's product to nonpreferred purchasers contrary to what was represented by the invoices it submitted to Kendall's rebate department. (Defendant's Mem.Supp. Summ.Judg. at 3.)

Kendall's former supervisor of its rebate processing department, Michael J. Carrol, testified that Kendall's management was very concerned about granting improper rebates to distributors. (Defendant's Ex. 1, Aff. of Michael J. Carrol, at ¶ 2.) For this reason, in 1992 Kendall instituted an audit program, which involved contacting end-customers to verify purchases of Kendall's product from certain distributors. (Id. at ¶ 2.) Kendall selected certain distributors to audit in this fashion including SMS. The audit involved sending letters to end-customers requesting that they provide copies of the distributor's invoices to confirm purchases of particular products from particular distributors. (Id.) SMS was audited because of its high volume of rebate claims for rebates of 50% or greater. (Id.)

In May of 1992, Kendall sent the first letters to end-customers seeking to verify SMS's sales. (Id. at 5; Defendant's Ex. 5 at attachment 2, May 27, 1992 letter from Carrol of Kendall to Terrebonne General Medical Center requesting copies of certain SMS invoices.) On the same day, Kendall wrote to Lawrence Fakier of SMS requesting invoices and shipping tickets on the same transactions. (Plaintiff's Ex. A, May 27, 1992 letter from M. Carrol to L. Fakier.) Fakier responded on June 28, 1992 by enclosing copies of false invoices and some delivery information. (Aff. of Sandra J. Copparini, at ¶ 3(b); Kendall's Ex. B, June 28, 1992 letter from L. Fakier to M. Carrol.) By July 23, 1992, Kendall received information that Terrebonne General Hospital, after two efforts to verify the SMS invoices, had no record of receiving or paying the SMS invoices in issue. (Defendant's Ex. 2, Depo. of Joanne Connata, at 42–43, 67–68 and attached Ex. 1–4.) Terrebonne General was not contacted again by Kendall about this matter until a year later when Kendall visited the hospital. (Id. at 43.) Between July 1992 and October 1992, two other Louisiana hospitals, Leonard J. Chabert Medical Center and Earl K. Long Medical Center, reported to Kendall that they were likewise unable to verify the SMS invoices in issue. (Defendant's Ex. 3, R. 30(b)(6) Depo. of Leonard Chabert Medical Center; Defendant's Ex. 4, and attachment 8, Letter from Earl K. Long Medical Center to Kendall dated October 7, 1992.)

In response, Kendall notified SMS on October 22, 1992 that SMS's customers could not verify its claim to shipments and requested proof of receipt of deliveries, other than invoices, within ten days. (Plaintiff's Ex. C, Letter to L. Fakier from Kendall dated October 22, 1992.) SMS acknowledged receipt of the letter on November 4, 1992 and agreed to furnish the requested information. (Kendall's Ex. D, Letter to Kendall from L. Fakier dated November 4, 1992.) On December 15, 1992, SMS transmitted some additional information and claimed that it made deliveries to two Louisiana hospitals by its own

truck. (Kendall's Ex. E, Letter from L. Fakier to Kendall dated December 15, 1992.) On January 28, 1993, Kendall's management received a memorandum from Sandra Copparini of its customer accounts audit group reporting that the Louisiana hospital customers could not confirm certain deliveries from SMS and that, after two requests for proof of delivery, SMS could not confirm many of the deliveries in issue with supporting documentation. (Plaintiff's Ex. F, January 28, 1993 memorandum from S. Copparini to D. Ulrich and M. Carrol.) The memorandum summarized the situation with respect to four of SMS's invoices to Southern Medical Center as follows:

Summary:

Original request included shipping POD [proof of delivery] for the two invoices, as well as invoice copies. Invoice copies were furnished without POD.

Letter of 10/22/92 reiterated our request for POD. They were omitted from their response.

Correspondence from So. Louisiana (attached) regarding our request for invoice copies is "incompatible" to what they have for invoices.

(*Id.*) From this point, it appears that Kendall took no further action on this information until the Summer of 1993. At that time, Kendall's employees documented their suspicion that SMS was illicitly claiming rebates for Kerlix purchased on the gray market. (Plaintiff's Ex. H, June 17, 1993 memorandum from Phil Royston to Jack Henry.) In August, 1993, SMS admitted discrepancies between rebates and sales, denied gray market purchases, and asked Kendall to wait until the end of the year to see if its accounts balanced out. (Plaintiff's Ex. I, August 23, 1993 letter from L. Fakier to Richard Ulrich.) Fakier offered no explanation of the unproved deliveries. In September of 1993, Kendall put invisible markings on product delivered to SMS and determined that SMS was in fact diverting product to third parties. (S. Copparini Affidavit at ¶ K.) Thereafter, the matter was turned over to Kendall's legal department, and Kendall filed suit on January 13, 1994.

## II. *DISCUSSION*

In its motion for summary judgment, SMS contends that Kendall pled its complaint in tort and is therefore subject to the one-year prescriptive period for tort actions. Since Kendall filed suit on January 13, 1994, SMS argues that all of Kendall's claims for damages arising prior to January 13, 1993 are prescribed. In response, Kendall asserts that the action is governed by the three-year prescriptive period for open account claims. The Court will examine each argument in turn.

### A. *Kendall's Cause of Action Arises in Tort*

■ Under Louisiana law, the "character of an action disclosed in the pleadings determines the prescriptive period applicable to that action." *Starns v. Emmons,* 538 So.2d 275, 277 (La.1989); *see also Gendusa v. City of New Orleans,* 635 So.2d 1158, 1161 (La. App. 4th Cir.1994), *writ denied,* 642 So.2d 1296 (La.). The Court must therefore analyze Kendall's complaint to determine if its claims are for satisfaction of an open account or for a tort.

■ The Court finds that Kendall's complaint is seeking a remedy for tortious conduct. Kendall's complaint alleges that SMS engaged in the following behavior:

### 10.

On information and belief, Kendall alleges that SMS fraudulently prepared and submitted false invoices for the express and unlawful purpose of obtaining rebates to which it was not entitled.

### 11.

The practice of obtaining rebates in this deceptive manner constitutes fraud and misrepresentation under Louisiana law and SMS is obliged under such law to reimburse Kendall for all amounts wrongfully taken and/or withheld from Kendall, and for all other damages, attorneys' fees, and costs resulting from this fraudulent and tortious activity.

Kendall's Complaint at ¶¶ 10-11 (emphasis added). Kendall's allegations set out a claim

for fraud, or fraudulent misrepresentation, which is classified as tortious conduct under Louisiana law. *See Equilease Corp. v. Smith Int'l, Inc.*, 588 F.2d 919, 923 n. 4 (5th Cir. 1979) (delictual recovery for fraud is provided for in article 2315, the general tort provision of the Civil Code); *Silver v. Nelson*, 610 F.Supp. 505, 517 (E.D.La.1985) (setting out elements of fraudulent misrepresentation). The general elements for a claim of fraudulent misrepresentation are as follows: (1) a misrepresentation of a material fact, (2) made with an intent to deceive, and (3) causing justifiable reliance with resulting injury. *See Nelson,* 610 F.Supp. at 517. All of these elements are present in Kendall's allegations.

The plaintiff's complaint also fits the facts for tortious conversion. Such a tort is committed when one acts in derogation of the plaintiff's possessory rights, and requires a "wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.,* 475 So.2d 756, 761 (La.1985); *see also Hampton v. Hibernia Nat'l Bank,* 598 So.2d 502, 504 (La.App.2d Cir.1992) (deciding whether action in tort or contract). Defendant's alleged preparation of false invoices to receive rebates to which it was not entitled meets the elements for tortious conversion. Therefore, the allegations contained in the complaint are delictual in nature and are governed by the one-year prescriptive period under La.Civ.Code art. 3492.[1]

However, Kendall contends that it pled an action for "open accounts," which is subject to a three-year prescriptive period. An "open account includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." La.R.S. 9:2781. Kendall's pleading is inconsistent with that of an open account action. First, Kendall makes no allegations of an open account in its complaint; instead, it asserts that SMS engaged in "fraudulent and tortious activity." Second, Kendall requests attorney's fees but

fails to allege that it made the proper written demand on SMS for the amount owed as is required under the statutory provision for open accounts. *See* La.R.S. 9:2781. This leads the Court to conclude that Kendall was not in fact pleading an action for open account, but one for tortious conduct. Accordingly, Kendall's action is subject to a one-year prescriptive period.

### B. *Accrual of Kendall's Cause of Action*

The prescriptive period set forth in La.Civ. Code art. 3492 begins running the date the injury or damage is sustained. *See Wimberly v. Gatch,* 635 So.2d 206, 210 (La.1994). However, Louisiana courts have created the doctrine of *contra non valentem agere nulla currit praescripto,* which means "prescription does not run against a party unable to act," as an exception to the general rule. *Id.* at 211. The doctrine of *contra non valentum* suspends prescription when the circumstances of the case fall under one of the following four categories:

(1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

(2) Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;

(3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and

(4) Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Id.*

■■■ At a minimum, the Court finds that the fourth category is applicable here. This category, commonly known as the discovery rule, provides that the prescriptive period commences when the injured party "discovers or should have discovered" the facts underlying his cause of action. *Id.* Thus, prescription does not run against one who is

---

1. The Court's illustration of the tort causes of action that are consistent with the allegations pled in the complaint is not meant to be an exhaustive one.

ignorant of those facts, so long as the ignorance is not "willful, negligent or unreasonable." *Id.* at 212. The prescriptive period begins to run when the injured party has either "constructive" or "actual" knowledge. Constructive knowledge sufficient to trigger prescription is more than mere apprehension that something might be wrong, but less than actual knowledge that something was wrong. *Griffin v. Kinberger,* 507 So.2d 821, 823 (La. 1987); *Wimberly v. Schumpert Medical Center,* 641 So.2d 1016, 1020 (La.App.2d Cir. 1994). Prescription begins to run when it can be objectively determined that the exercise of reasonable diligence would have alerted a reasonably minded plaintiff of the reasonable possibility that it was the victim of tortious conduct. *Griffin,* 507 So.2d at 823; *Wimberly,* 641 So.2d at 1020.

■ The Court finds that Kendall had constructive knowledge of its cause of action once the January 28, 1993 memorandum was submitted to Kendall's management. (*See* Plaintiff's Ex. F.) Because Kendall filed its complaint within one year of acquiring constructive knowledge, none of its claims are prescribed. While it is true as defendant claims that Kendall knew in the Summer of 1992 that its customers could not verify SMS's sales, and that by October 1992, SMS had not produced requested proof of delivery, it was not unreasonable for Kendall to follow up with a valued distributor such as SMS by informing it of the discrepancies and giving it another opportunity to provide an explanation or supporting documentation. This is what Kendall did by its October 22, 1992 letter to SMS. (*See* Plaintiff's Ex. C.) It is also not unreasonable for Kendall to have awaited a response to its October 22, 1992 letter and to take time to evaluate the information received in response to its letter. It apparently did this also, which resulted in the January 28, 1993 memorandum by Sandra Copparini to Kendall's management. However, once Kendall's management was apprised of the information in the January 28, 1993 memorandum, which outlined the situation in detail, it had knowledge of sufficient facts that would have alerted a reasonable plaintiff of the reasonable possibility that SMS was engaging in tortious conduct. *See Griffin, supra,* 507 So.2d at 823; *Wim-*

*berly, supra,* 641 So.2d at 1020. Although the January 28, 1993 memorandum did not label SMS's conduct as fraudulent, it did not offer an innocent explanation of it, and it set forth SMS's repeated failure to explain satisfactorily why it could not document deliveries that its customers had no records of receiving. *See Wimberly, supra,* 635 So.2d at 212 (ignorance must not be willful, negligent or unreasonable). Furthermore, SMS obviously had a motive to engage in the challenged conduct because it could enhance its profits by doing so. Accordingly, Kendall had constructive knowledge of its cause of action as of January 28, 1993. Since this action was filed within one year of that date, the action is timely. Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment is hereby **DENIED.**