702 So.2d 1073 (1997)
Elizabeth Morales TOWNSLEY, Plaintiff-Appellant,
v.
Dr. Robert E. BRIERTY, et al., Defendants-Appellees.
No. 97-601.
Court of Appeal of Louisiana, Third Circuit.
October 29, 1997.
John Layne Hammons, Shreveport, for Elizabeth Morales Townsley.
Stephen M. Pizzo, Metairie, for Robert E. Brierty M.D.
Benjamin Wakefield Mount, Lake Charles, for Floyd Guidry M.D.
John E. Bergstedt, Lake Charles, for A. Gene Lampson M.D.
Before SAUNDERS, PETERS and AMY, JJ.
AMY, Judge.
Plaintiff, Elizabeth Townsley appeals from a judgment dismissing with prejudice her claims for medical malpractice against Dr. Floyd Guidry based on a Peremptory Exception of Prescription. For the following reasons, we reverse.

DISCUSSION OF THE RECORD
In late February 1991, Dr. Floyd Guidry, an obstetrician/gynecologist, treated Elizabeth Townsley for complications during a pregnancy. To determine the cause of Elizabeth's discomfort, Dr. Guidry admitted her to Humana Hospital in Lake Charles, Louisiana to have a transvaginal ultrasound performed. Based upon the radiologist's impression of an impending spontaneous abortion, Dr. Guidry performed a D & C.[1] During the weeks that followed, Elizabeth voiced continuing complaints of bleeding, pain and vomiting to Dr. Guidry, which he concluded were symptomatic of the terminated intrauterine pregnancy. Subsequently, on March 20, 1991, Elizabeth, still suffering from abdominal pain and vaginal bleeding, went to the emergency room at Lake Charles Memorial Hospital. At this time, an emergency room physician made a diagnosis of ectopic pregnancy. In conformity with this new diagnosis, the necessary surgery was conducted the next day on March 21, 1991.
Pursuant to La.R.S. 40:1299.47(A), on February 6, 1992, Elizabeth submitted a claim *1074 against Dr. Guidry and another doctor requesting a medical review panel be assigned to render an opinion regarding any possible malpractice. The medical review panel rendered its opinion on September 27, 1994, which opinion was received by plaintiff's counsel by certified mail on October 10, 1994. On January 26, 1995, Elizabeth filed a "First Amending and Supplemental Petition" adding Dr. Guidry and Dr. A.G. Lampson, the radiologist who read the transvaginal ultrasound, to a suit already filed on May 10, 1994 against Dr. Robert Brierty,[2] the pathologist who reviewed tissue extracted during the "D & C" procedure performed by Dr. Guidry.
On December 18, 1996, Dr. Guidry filed a Peremptory Exception of Prescription asserting that Elizabeth's claim against him had prescribed eighteen days before the filing of plaintiff's first supplemental petition. On February 25, 1997, the district court, finding that prescription expired on January 8, 1995, dismissed all claims against Dr. Guidry, with prejudice.
Plaintiff appeals alleging that the district court erred in its application of La.R.S. 9:5628 and La.R.S. 40:1299.47(A)(2)(a) when calculating the period of time within which suit must be instituted by the plaintiff against the defendant, Dr. Guidry.

LAW
The statutes governing prescription of actions against private health care providers for claims of medical malpractice are as follows.
La.R.S. 9:5628 provides in pertinent part:
(A) No action for damages for injury or death against any physician, ... whether based upon tort, or breach of contract or otherwise out of patient care shall be brought unless filed within one year from the date the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; however, even as to claims filed within one year from the date of discovery, in all events such claims shall be filed at the latest within a period of three years of the date of the alleged act, omission or neglect.
Additionally, La.R.S. 40:1299.47(A)(2)(a) provides for suspension[3] of prescription, as follows:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part[.]
(Emphasis added).
In analyzing the issue before us, we initially note that the Louisiana Supreme Court has held that the time limitations embodied in La.R.S. 9:5628 are prescriptive rather than peremptive, "with only the single qualification that the discovery rule is expressly made inapplicable after three years from the act, omission or neglect." Hebert v. Doctors Memorial Hospital, 486 So.2d 717, 724 (La. 1986). Following the supreme court's directive that the three-year provision of La. R.S. 9:5628 is a prescriptive period rather than a peremptive period, it is, therefore, subject to suspension. Accordingly, since the plaintiff discovered the alleged malpractice well before the "maximum prescriptive period" of three years, our decision turns squarely on the correct interpretation of La. R.S. 40:1299.47(A)(2)(a).
The district judge, in his reasons for judgment, interprets this statute to suspend liberative prescription until receipt of the opinion rendered by the medical review panel and that it then grants a plaintiff with less than ninety days remaining in the prescriptive period, ninety days from that receipt to file a claim in district court against the health *1075 care provider. The district court issued, in part, the following reasons for judgment:
In this case, using the date most favorable to plaintiff, May 1, 1991, the one-year prescription began running that date, and was suspended by the filing of the medical malpractice claim on February 6, 1992, at which time prescription had run 9 months and 5 days. Prescription recommenced running October 10, 1994, when plaintiff received notice of the medical review panel's opinion. As of that date, plaintiff had 2 months and 25 days to run on the one-year prescriptive period, give or take a day or two, depending upon whether one calculates the months at 30 days or the lesser days in the case of February, which in this case is moot. By any calculation, plaintiff had less than 90 days remaining on the one-year prescription as of October 10, 1994, and thus, gained the benefit of the extra days provided by the 90 day limit in the statute. By the court's calculation, there were 21 days remaining in October after the plaintiff received notice October 10.1994, 30 days in November, and 31 days in December, which brings the total to 82, leaving plaintiff 8 more days until January 8, 1995, well after the one year prescription; and, therefore, plaintiff's claim as against Dr. Guidry had prescribed.
In the referenced telephone conference with counsel on February 25, plaintiff's attorney advanced the argument that the statute should be interpreted to provide that the suspension itself continues until the running of the 90 days, and would not recommence running until January 8, 1995. The filing of suit January 26, 1995, would be timely if, as plaintiff argues, plaintiff's remaining 2 months and 25 days do not recommence running until January 8, 1995. Under the above jurisprudence cited, plaintiff's interpretation is not the law. The prescription recommenced running October 10, 1994.
However, La.R.S. 40:1299.47(A)(2)(a) clearly provides for the suspension of prescription until ninety days after receipt of the medical review panel's decision. When this ninety-day period expires, the period of suspension terminates and prescription commences to run again. La.Civ.Code art. 3472; Wimberly v. Schumpert Medical Center, 25,957 (La. App. 2 Cir. 8/17/94), 641 So.2d 1016, writ denied, 94-2311 (La.12/19/94), 648 So.2d 401; Stamp v. Okpalobi, 599 So.2d 896 (La.App. 4 Cir.1992); see also Bordelon v. Kaplan, 96-1205 (La.App. 3 Cir. 3/5/97), 692 So.2d 581.[4]
Since the prescriptive period is suspended rather than interrupted, La.Civ.Code art. 3472 provides that "[t]he period of suspension is not counted toward accrual of prescription [and][p]rescription commences to run again upon the termination of the period of suspension." Once prescription commences to run again, counting begins at the point at which the suspensive period began. *1076 Accordingly, in the present case, liberative prescription did not begin to run again until January 8, 1995, ninety days after the Medical Review Panel's opinion was received on October 10, 1994. So, beginning on January 8, 1995, Elizabeth had, as calculated by the district court, two months and twenty-five days remaining in the one-year prescriptive period in which to file her claim against Dr. Guidry. Therefore, Elizabeth's claim filed against Dr. Guidry on January 26, 1995 was timely and interrupted prescription. The ruling of the district court to the contrary was error. Accordingly, we reverse the district court's judgment dismissing Plaintiff's claims against Dr. Guidry and remand this case to the district court for further proceedings consistent with this opinion.

DECREE
The judgment of the district court granting Defendant's Peremptory Exception of Prescription is reversed. Plaintiff's claims against the defendant are remanded to the district court for further proceedings. All costs of this appeal are to be borne by the Defendant, Dr. Floyd Guidry.
REVERSED AND REMANDED.
NOTES
[1] D & C is the abbreviation for the medical procedure, dilation and curettage. This medical procedure involves "dilation of the cervix and curettement of the endometrium." STEDMAN'S MEDICAL DICTIONARY 485 (26th ed.1995).
[2] On March 12, 1994, plaintiff was informed by the PCF that Dr. Brierty was not a "qualified health care provider" under La.R.S. 40:1299.47.
[3] La.Civ.Code art. 3472 provides as follows:

The period of suspension is not counted toward accrual of prescription. Prescription commences to run again upon the termination of the period of suspension.
[4] The district court also cites the case of Zeno v. Smith, 541 So.2d 1019 (La.App. 3 Cir.1989) and finds that decision analogous to the one presently under review. In Zeno, this court was deciding whether a suit filed against a non-qualified health care provider was timely. The version of La.R.S. 40:1299.41(G) applicable to that case provided as follows:

Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended for a period of ninety days after a panel is formed under the provisions of this Part, provided a claim is made against the in solido obligor either under the provisions of this Part or in a court of law within the ninety day period. For the purpose of this Part the panel shall be deemed to be formed on the date that the third health care provider member of the panel is chosen.
Clearly, the situation presently under review differs from that before the court in Zeno. In the case sub judice, we are evaluating whether an action filed against a qualified health care provider was timely. Additionally, since statutes governing prescription are remedial, the now amended version of La.R.S. 40:1299.41(G), which was approved by the governor on July 17, 1991, would be applicable, if a non-qualified health care provider was at issue, in the case sub judice. Brown v. Reese, 532 So.2d 187 (La.App. 2 Cir.1988). The present version of La.R.S. 40:1299.41(G) provides:
Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended in accordance with the provisions of R.S. 40:1299.47(A)(2)(a).