749 So.2d 824 (1999)
Joseph KAVANAUGH, et ux., Plaintiff-Appellant,
v.
Thomas EDWARDS, M.D., Defendant-Appellee.
No. 32,413-CA.
Court of Appeal of Louisiana, Second Circuit.
December 8, 1999.
Rehearing Denied January 20, 2000.
*826 Sentell Law Firm by C. Sherburne Sentell, John L. Hammons, Minden, Counsel for Appellant.
Pugh, Pugh & Pugh by Robert G. Pugh, Jr., Shreveport, Counsel for Appellee.
Before BROWN, WILLIAMS and KOSTELKA, JJ.
WILLIAMS, Judge.
The plaintiffs, Joseph and Dorothy Kavanaugh, appeal the trial court's judgment dismissing their medical malpractice claim against the defendant, Thomas Edwards, M.D., on a peremptory exception of prescription. For the following reasons, we affirm.

FACTS[1]
On March 1, 1983, the defendant, Dr. Thomas Edwards, an orthopedist, treated the plaintiff, Joseph Kavanaugh, for a *827 work-related neck injury. On March 4, 1983, Dr. Edwards admitted Kavanaugh to Bossier Medical Center and secured Dr. Warren Long, a neurosurgeon, for consultation. Dr. Long performed a myelogram, which revealed that the plaintiff had a herniated disk at C5-6. Dr. Long recommended that plaintiff undergo a diskectomy with a fusion of the C5 and C6 vertebrae.
The plaintiff was again admitted to Bossier Medical Center in April 1983, and Dr. Long performed cervical surgery to remove and fuse the herniated disk. However, instead of operating on C5-6, Dr. Long removed the C6-7 disk and performed a fusion of the vertebrae at that level.
During his post-operative visits with Dr. Long, the plaintiff continued to complain of pain in his hand and neck. Eventually, the plaintiff became dissatisfied with Dr. Long and discontinued his post-operative visits. The plaintiff last communicated with Dr. Long's office in May 1984, when plaintiff sent a letter requesting that Dr. Long complete a workers' compensation form.
Kavanaugh went back to his original treating physician, Dr. Edwards, in July 1984, over a year after surgery. At this time he was still having neck and shoulder pain, the same complaints as before surgery; nevertheless, he had resumed his work as a heating and air contractor at Barksdale AFB. Dr. Edwards ordered a "cervical series" and, later, a CT scan, neither of which showed any evidence of a fusion at C5-6; he advised Kavanaugh on July 20, 1984 that apparently the fusion had been "absorbed." In spite of X-rays and the CT scan inconsistent with the history of a fusion, Dr. Edwards maintained he did not contact Dr. Long or review the hospital records.
Because of continued symptoms, Dr. Edwards referred Kavanaugh to Dr. Donald Ray Smith in September 1984. Dr. Smith testified that at the time, the patient gave him a history of surgery at C6-7, and that he discussed this fact with Kavanaugh; however, Dr. Smith's contemporaneous notes do not refer to any particular level. Dr. Smith's September 18 letter to Dr. Edwards stated, based on the patient's comments and review of Dr. Edwards's July 1984 X-ray, that the surgery was probably at C-6-7, but there were still osteophytes at the C5-6 level. At the trial against Dr. Long, Kavanaugh testified that during the September 1984 visit, Dr. Smith discussed the problems at C5-6, where Kavanaugh always thought his problems were, and that the doctor's dictation referring to C6-7 was wrong.
Although the plaintiff continued to work, his condition gradually deteriorated. For several years he regularly treated with Dr. Edwards, who ordered an MRI in late August 1989. Dr. Edwards again referred the plaintiff to Dr. Smith. The plaintiff saw Dr. Smith on September 8, 1989. At the trial against Dr. Long, Dr. Smith testified that he reviewed the plaintiff's MRI and advised the plaintiff that he had definitely undergone a fusion at C6-7, that he could not discern any evidence of a fusion at C5-6 and that there were osteophytes at C5-6 which could be remedied by fusion. The plaintiff continued to see Dr. Edwards until March 27, 1990.

PROCEDURAL HISTORY
On October 24, 1990, the plaintiffs filed a petition with the medical review panel asserting that Dr. Long had performed surgery at the wrong cervical level and that Drs. Long and Edwards were liable for failing to inform Kavanaugh of the malpractice. The medical review panel found that Dr. Long had failed to meet the proper standard of care by failing to assure that he operated on the right level and by not advising the plaintiff of such. The panel did not assess any fault to Dr. Edwards.
Subsequently, the plaintiffs filed two separate law suits. On April 27, 1993, the plaintiffs filed a medical malpractice claim and an intentional tort claim against Dr. Long in the First Judicial District Court of *828 Louisiana. In response to the claim, Dr. Long filed a peremptory exception of prescription. See Kavanaugh v. Long, 29,380 (La.App.2d Cir.8/20/97), 698 So.2d 730, writ denied, 97-2554 (La.5/15/98), 719 So.2d 67. On the same day, the plaintiffs filed a medical malpractice claim and an intentional tort claim against Dr. Edwards in the Twenty-Sixth Judicial District Court of Louisiana.[2]
In reference to the claim filed against Dr. Long, a jury found that the plaintiffs failed to bring their action within the one-year prescriptive period or within one year from the date that Kavanaugh knew or should have reasonably known that Dr. Long had performed surgery at the wrong level. This court upheld the jury's decision and the supreme court denied writs. See Kavanaugh v. Long, supra. Thereafter, Dr. Edwards also filed an exception of prescription, which the trial court granted. The plaintiffs appeal.

DISCUSSION

Assignment of Error No. 1
The plaintiffs contend the trial court was clearly wrong in finding that the action against Dr. Edwards had prescribed. They contend that the defendant knew of the malpractice but concealed this information. By their first assignment of error, the plaintiffs argue that their claim had not prescribed on its face, and therefore, the trial court erred in placing the burden of proof on them to prove that their claim had not prescribed.
Generally, a medical malpractice action must be filed within one year of the alleged act, omission or neglect or within one year from the date of discovery of the alleged act, omission or neglect, but in all cases, no later than three years from the date of the alleged act, omission or neglect. LSA-R.S. 9:5628(A).
The burden of proof generally rests upon the party pleading prescription as an affirmative defense. However, where the plaintiff's petition shows on its face that the asserted claim has prescribed, the plaintiff bears the burden of proving that prescription has been sufficiently interrupted or suspended so as to bring the action within the prescriptive period. Whether a pleading has prescribed on its face must be determined, in part, according to the date plaintiff alleged knowledge of the tortious act, the damage, and the causal relation between the wrongful act and the damage. The burden of proof does not shift to the plaintiff unless the face of the petition reveals that the plaintiff had knowledge of the damage and its cause at a time beyond the prescriptive period. Abrams v. Herbert, 590 So.2d 1291 (La.App. 1st Cir.1991); Chandler v. Highland Clinic, 28,204 (La.App.2d Cir.4/3/96), 671 So.2d 1271.
The alleged act, omission or neglect identified by the plaintiffs occurred on April 17, 1983, when Dr. Long operated on the wrong disk. Therefore, plaintiffs had until April 1984, or April 1986 at the latest, to file a claim against the defendant. The record reflects that the plaintiffs filed their petition with the medical review panel on October 24, 1990 and the present claim on April 27, 1993. The plaintiffs' petition shows on its face that the claim had prescribed. Therefore, the trial court did not err in placing the burden on the plaintiffs to prove interruption or suspension of the prescriptive period.

Assignments of Error Nos. 2 & 3
By these assignments, the plaintiffs assert that the trial court erred in deferring to the findings of fact made by this court in Kavanaugh v. Long, supra. The plaintiffs argue that this court rendered an opinion which merely recited facts that the jury had apparently accepted. The plaintiffs maintain that this court neither made any findings of fact nor approved of the jury's findings of fact.
*829 It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Where there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989).
There is no indication that this court found any of the facts set forth in Kavanaugh v. Long to be erroneous or clearly wrong. Although it is not expressly stated, it can be inferred that this court accepted the facts as true and relied on them in formulating its opinion.
In his written reasons for judgment, the trial judge stated that he would "defer to the findings of fact made by the Court in Kavanaugh v. Long, supra, to the extent they are applicable." (Emphasis added). Although the plaintiff filed separate claims against Drs. Long and Edwards, the claims are primarily based on the same facts. Thus, the trial court did not err in considering the facts as set forth in Kavanaugh v. Long, supra. These assignments of error lack merit.

Assignments of Error No. 4, 7 & 9
Plaintiffs rely on Trainor v. Young, 561 So.2d 722 (La.App. 2d Cir.1990), to support their contention that the trial court erred in failing to apply the "doctor/patient exception" to prescription. The plaintiffs argue that prescription was suspended by the continuing relationship between the plaintiff and his physician. The plaintiffs further assert that the trial court erred in not applying the doctrine of contra non valentem agere nulla currit praescriptio (contra non valentem) to the facts of this case.
In certain circumstances, a doctor's continuing professional relationship with his patient might give rise to the suspension or interruption of prescription. Trainor v. Young, supra. However, interruption of prescription by the continued existence of a professional relationship is not based on a continuous action constituting a continuing tort, but is based on the premise that the professional relationship is likely to hinder the patient's inclination to sue. Trainor v. Young, supra.
In Trainor, as in the present case, the plaintiff continued treatment with her doctor after the malpractice had occurred. However, the Trainor case is distinguishable from the present case in that the plaintiff in Trainor was not aware of the malpractice during the period of post-operative care. Further, unlike the plaintiff in Trainor, the plaintiffs in the present case are asserting a "doctor/patient exception" to prescription for a claim against a doctor who plaintiffs admit did not commit the actual act that caused the injury.
Plaintiffs apparently argue that plaintiff's continuing relationship with Dr. Edwards gave rise to an interruption of prescription because they would not have continued the relationship had they suspected Dr. Long's malpractice [and Dr. Edward's alleged concealment] sooner. After the plaintiff refused any further treatment by Dr. Long, Dr. Edwards referred him yet to another neurosurgeon, Dr. Smith, in an attempt to resolve the plaintiff's problems. Thus, there is nothing in the record to support the plaintiffs' argument that a continuing tort occurred.
The plaintiffs next argue that the second category of contra non valentem applies in this case. The doctrine interrupts or suspends prescription in four general situations:
(1) Some legal cause prevents the courts or their officers from taking cognizance of the plaintiff's action;
(2) Some condition coupled with the contract or connected with the proceedings prevented the creditor from suing;
(3) The debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and

*830 (4) The cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.
A prescriptive statute operates from the date of a plaintiff's discovery of his cause of action. Contra non valentem is invoked to suspend the running of prescription during the period in which the cause of action was not known or reasonably knowable to a plaintiff. Wimberly v. Schumpert Medical Center, 25,957 (La. App.2d Cir.8/17/94), 641 So.2d 1016. Prescription does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent, or unreasonable. Wimberly v. Schumpert Medical Center, supra.
"Constructive" knowledge, as distinguished from "actual" knowledge, when found, is the starting point of the prescriptive period where contra non valentem is urged. Constructive knowledge sufficient to trigger prescription is more than a mere apprehension that something might be wrong, but less than actual knowledge that something was wrong. Liberative prescription is deemed to begin running when it can be objectively determined that the exercise of reasonable diligence would have alerted a reasonably minded plaintiff of the reasonable possibility that the condition may have been caused by medical malpractice. Wimberly v. Schumpert Medical Center, supra.
The plaintiff contends that he did not become aware of the malpractice until November 30, 1989 when he saw the results of the MRI report. However, the record reflects that, on at least one occasion during the period of his post-operative visits with Dr. Long, the plaintiff complained of symptoms identical to those that he suffered prior to the surgery. In July 1984, the plaintiff returned to Dr. Edwards for treatment with the same complaints that he had before he underwent surgery. Dr. Smith testified that, in September 1989, he informed the plaintiff his fusion had been performed at C6-7 and recommended a fusion at C5-6 to remedy plaintiff's medical problems. Thus, the record reflects that the plaintiff had the requisite constructive knowledge of the possible malpractice, at least, on September 8, 1989 after consulting with Dr. Smith, and the exercise of reasonable diligence would have alerted him of the reasonable possibility that his post-operative condition may have been caused by medical malpractice. The trial court did not err in finding that the plaintiff knew or should have known of the malpractice as early as September 8, 1989.
These assignments are without merit.

Assignments of Error Nos. 5, 6 & 8
By these assignments, the plaintiffs contend the trial court erred in finding that notice of the malpractice by a third party, i.e., Dr. Smith, was sufficient to begin the running of prescription. The plaintiffs also argue that the trial court erred in its determination of when the plaintiff became aware of the malpractice.
The source of the information received by the plaintiffs concerning the possible malpractice is not instrumental in determining whether the cause of action was known or reasonably "knowable" by the plaintiff. Dr. Smith testified that, although he never used the words "wrong level" when referring to surgery, he had "discussed this study (with Kavanaugh) in great detail, being as plain as I could that he (Kavanaugh) definitely had surgery at C6-7." The information conveyed to the plaintiff by Dr. Smith, in September 1989, placed the plaintiff on notice of possible malpractice and was sufficient to begin the running of prescription. Of course, prescription also began to run against the plaintiffs' related medical malpractice claim against Dr. Edwards at that time. Based on this record, we must conclude that the trial court did not err in finding that the plaintiffs' action against Dr. Edwards had prescribed.
*831 Thess assignments of error are without merit.

DECREE
For the foregoing reasons, the judgment granting the defendant's exception of prescription is affirmed. All costs of this appeal are assessed to the plaintiffs, Joseph C. Kavanaugh and Dorothy Kavanaugh.
AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, GASKINS, and KOSTELKA, JJ.
Rehearing Denied.
NOTES
[1] Kavanaugh v. Long, 29,380 (La.App.2d Cir.8/20/97), 698 So.2d 730, writ denied, 97-2554 (La.5/15/98), 719 So.2d 67 and the present claim arise out of the same set of facts. However, the record of the present case does not contain a detailed account of the facts. Therefore, we will refer to Kavanaugh v. Long, supra, to establish the facts in the present case.
[2] This action remained dormant until the conclusion of Kavanaugh v. Long, supra.